504 A.2d 935

**Paul C. COOKE, Jr., Appellant,**

v.

**TRAVELERS INSURANCE CO. and Fireman's Insurance Co. of Newark, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1985.

Filed Feb. 13, 1986.

James V. Fareri, Stroudsburg, for appellant.

Edward H. McGee, Allentown, for appellees.

Before WIEAND, CERCONE and ROBERTS, JJ.

WIEAND, Judge:

The sole issue in this appeal is whether the trial court erred when it held as a matter of law that no-fault work loss benefits could not be recovered by a claimant who sustained injuries when he fell while descending from a tank truck which he had mounted for the purpose of priming a pump thereon. We conclude that the court's ruling must be reversed.

An action in assumpsit was instituted by Paul C. Cooke, Jr., the appellant, for the purpose of recovering work loss benefits from Fireman's Insurance Company of Newark (Fireman's), the appellee,[1] which had written the insurance on the truck. After all of the evidence had been presented to a jury, the trial court granted a motion for directed verdict in favor of Fireman's on the grounds that Cooke had not been a "victim" of an accident within the terms of the Pennsylvania No-fault Motor Vehicle Insurance Act.[2] Posttrial motions were denied, and judgment was entered in favor of Fireman's. Cooke appealed.

Paul C. Cooke, Jr., was employed as a laborer by the Nyleve Company at a construction project in Yardley, Pennsylvania. On September 11, 1981, he was using a power saw to cut concrete on a bridge which spanned the Delaware River. The blade of the saw was cooled by water funnelled from a water tank situated on a flatbed truck.[3] When Cooke found himself in need of water, he drove the truck across the bridge into New Jersey, intending to get water from the Raritan Channel. Although the tank was

1. The complaint also named as a defendant the Travelers Insurance Company, but this claim was settled prior to trial.
2. Act of July 19, 1974, P.L. 489, No. 176, § 101 et seq., 40 P.S. § 1009.101 et seq., repealed by Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.
3. The truck was owned by Wilmer R. Schultz, Inc., a Pennsylvania corporation.

equipped with a self-priming pump, on this occasion the pump's self-priming mechanism did not work properly. Therefore, in order to prime the pump, Cooke climbed onto the water tank and poured water into a hose attached to the tank. He testified that he "got the thing running all right ... and I went to get down, and this is when I slipped ... when I slipped, I was standing on a pipe, off the bed of the truck ... I fell, and I hit my chest on the chest bone on this pipe, and from there, I continued to fall down, and hit the bed of the truck, or the side of the truck...." (Record, p. 21a).

The No-fault Motor Vehicle Insurance Act, at section 201(b), 40 P.S. § 1009.201(b), provides as follows:

If the accident resulting in injury occurs outside of this Commonwealth, a victim ... is entitled to receive basic loss benefits if such victim was or is:

(1) an insured; or

(2) the driver or other occupant of a secured vehicle.

■ When the words of a statute are clear and free of ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. Statutory Construction Act, Act of Dec. 6, 1972, P.L. 1339, No. 290, § 3, 1 Pa.C.S. § 1921(b). Section 103 of the No-fault Act[4] defines "victim" as "an individual who suffers injury arising out of the maintenance or use of a motor vehicle." "Maintenance or use of a motor vehicle," in turn, "means maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, or alighting from it. Maintenance or use of a motor vehicle does not include ... conduct in the course of loading or unloading a motor vehicle unless the conduct occurs while occupying, entering into, or alighting from it." "The word 'alight' means 'to spring down, get down, or descend (as ... from a vehicle)....' " *Dull v. Employers Mutual Casualty Co.*, 278 Pa.Super. 569, 572, 420 A.2d 688, 689 (1980),

4. 40 P.S. § 1009.103.

quoting Webster's Third New International Dictionary 1561 (unabridged 1967).

■ On a motion for directed verdict, the trial court must consider the facts in the light most favorable to the party against whom the motion is made and must accept as true all evidence which supports that party's contention and must reject all adverse testimony. *East Texas Motor Freight, Diamond Division v. Lloyd*, 335 Pa.Super. 464, 468, 484 A.2d 797, 798 (1984), quoting *Lattanze v. Silverstrini*, 302 Pa.Super. 217, 220, 448 A.2d 605, 606 (1982); *Heffner By Heffner v. Schad*, 330 Pa.Super. 101, 105, 478 A.2d 1372, 1374 (1984); *Timbrook v. Foremost Insurance Co.*, 324 Pa.Super. 384, 387, 471 A.2d 891, 892–893 (1984); *Beary v. Pennsylvania Electric Co.*, 322 Pa.Super. 52, 56, 469 A.2d 176, 178 (1983). A directed verdict may be granted only where the facts are clear and there is no room for doubt. *East Texas Motor Freight, Diamond Division v. Lloyd, supra*, 335 Pa.Superior Ct. at 468, 484 A.2d at 799, quoting *Lattanze v. Silverstrini, supra; Beary v. Pennsylvania Electric Co., supra*.

■ Cooke testified on direct examination that he slipped and fell as he started to descend from the truck. From this evidence a jury could have found that Cooke was "alighting" from the truck when he fell. Therefore, the trial court erred by holding as a matter of law that appellant was not a victim of an accident arising out of the use or maintenance of a motor vehicle. The entry of a directed verdict in favor of the no-fault carrier must be reversed.[5]

Reversed and remanded for a new trial. Jurisdiction is not retained.

CERCONE, J., did not participate in the decision of this appeal.

---

5. Although there was evidence from which a jury could have found that appellant fell while he was siphoning water into the tank on the truck, this evidence at best created an issue of fact for the jury to resolve.