612 A.2d 450

**Richard E. THOMPSON and Darlene I. Thompson, His Wife**

**v.**

**The MARYLAND AND PENNSYLVANIA RAILROAD PRESERVATION SOCIETY, Appellant.**

Superior Court of Pennsylvania.

Argued April 8, 1992.

Filed June 30, 1992.

218

Steven M. Hovis, York, for appellant.

Ronald L. Hershner, York, for appellees.

Vincent E. Duane, pro se.

Christopher R. Cook, pro se.

Before OLSZEWSKI, BECK and HOFFMAN, JJ.

HOFFMAN, Judge.

This is an appeal from judgment entered August 8, 1991, denying the Maryland and Pennsylvania Railroad Preservation Society's ["Preservation Society"] post-verdict motions, and upholding a jury verdict finding that Preservation Society did not have an interest in the property which was the subject of the dispute. Preservation Society contends that the trial court erred (1) by not allowing the society to introduce evidence on the issue of whether the railroad owned a fee simple interest; (2) by not granting Preservation Society's motion for a directed verdict; (3) by not entering judgment notwithstanding the verdict; (4) by committing reversible error in its jury instructions; and (5) by mischaracterizing the Preservation Society's predecessor's

interest in the disputed property. For the following reasons, we reverse.[1]

The instant dispute involves a portion of land in which the Maryland & Pennsylvania Railroad Company ("M & P") possessed a right of way interest conveyed to them by Elizabeth Shaul in 1872.[2] The property through which the right of way passes is now owned by Richard and Darlene Thompson ["the Thompsons"], appellees herein. Specifically, this dispute arises out of M & P's quitclaiming its interest in an eight-mile stretch of the railroad to Preservation Society, which organized to oppose dismantlement of the railway after M & P had terminated service on the line and begun to remove the tracks.

M & P operated a passenger and freight railway service until the early 1980s, when the service was discontinued. In February 1985, M & P petitioned the Interstate Commerce Commission ("ICC") for permission to abandon service on that line.[3] That petition was granted in 1986. M & P then sought to sell the line, but was unable to do so. Thus, M & P entered into a Salvage Agreement with Pohl Corporation ("Pohl") in September 1986, under which M & P sold to Pohl all of the tracks and rails for scrap value. Pohl began removing the tracks starting from both ends. Additionally, M & P began issuing quitclaim deeds to other land owners adjoining the Thompsons along the length of the right of way, thus clearing itself of the rights of way that it had acquired across private property for operation of its railroad.

During this time, Preservation Society, concerned with maintaining the railroad's historical value, organized to oppose dismantlement of the railroad. Preservation Society

---

1. Although we ultimately reverse on Preservation Society's jury instruction issue, we must address Preservation Society's two contentions that have been preserved for review because if there is merit to those issues, the required relief would be greater than that called for as a result of the jury instruction error.

2. M & P is not a party to the instant action.

3. Application to the ICC was necessary because the railroad crossed the Maryland state line.

approached M & P with a plan to purchase an eight-mile stretch of the railroad, a portion of which is situated on the Thompsons' property. M & P advised Preservation Society to contact Pohl, who agreed to refrain from removing the eight-mile stretch of track if Preservation Society paid Pohl the profit it would have realized from the track's salvage value. On May 18, 1987, M & P executed a quitclaim deed conveying to Preservation Society its interest in the eight-miles of land.

The Thompsons brought an action to quiet title on January 4, 1988, in the Court of Common Pleas of York County. A jury trial was conducted on February 4–6, 1991. At the conclusion, a verdict was rendered for the Thompsons. Preservation Society's post-trial motions were filed and denied. This timely appeal followed.

Preliminarily, we note that when reviewing a trial court's decision in a quiet title action, an appellate court must determine whether the findings of fact that led to the legal conclusion of abandonment of a property interest were supported by competent evidence. *Leet v. Vinglas*, 366 Pa.Super. 294, 298, 531 A.2d 17, 19 (1987) (citing *MacCurdy v. Lindey*, 349 Pa. 655, 658, 37 A.2d 514, 516 (1944)), *appeal denied*, 518 Pa. 626, 541 A.2d 1138 (1988). Ordinarily, an appellate court will not reverse a determination of the trial court in a quiet title action absent an error of law or capricious disregard of the evidence. *Klebach v. Mellon Bank*, 388 Pa.Super. 203, 207, 565 A.2d 448, 450 (1989), *appeal granted*, 527 Pa. 647, 593 A.2d 420 (1990).

## I.

Preservation Society first contends that the lower court erred by not allowing it to introduce evidence at trial on the issue of whether M & P owned a fee simple interest in the disputed property. The trial court entered an order on October 2, 1990 following a hearing, in which it found as a matter of law that the interest conveyed to M & P was not a

fee simple interest, but rather a right of way. *See* Order, October 2, 1990, at 2.

We cannot consider whether this order was correct, as Preservation Society did not raise the issue in post-trial motions, nor did the trial court address it in its opinion. Thus, Preservation Society has failed to preserve it for our review. *See* Pa.R.Civ.P. 227.1(b)(2); Pa.R.A.P. 302(b). *See also Bryant v. Girard Bank*, 358 Pa.Super. 335, 344, 517 A.2d 968, 973 (1986).

## II.

Preservation Society next contends that the trial court erred by denying its motion for a directed verdict. Specifically, Preservation Society argues that the Thompsons did not present sufficient evidence to satisfy the two-prong test establishing abandonment. This claim is without merit.

Initially, we note that "[i]n reviewing the grant or denial of a motion for a directed verdict, we must determine if 'an abuse of discretion or error of law which controlled the outcome of the case occurred'.... If so, only then will we reverse." *Fleck v. Timmons*, 374 Pa.Super. 417, 426–27, 543 A.2d 148, 153 (1988) (quoting *Bucchianeri v. Equitable Gas Company*, 341 Pa.Super. 319, 328, 491 A.2d 835, 840 (1985)). In deciding a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the party against whom the motion is made and must accept as true all evidence which supports that party's contention and must reject all adverse testimony. *Cooke v. Travelers Ins. Co.*, 350 Pa.Super. 467, 471, 504 A.2d 935, 936 (1986) (citations omitted).

Moreover, "[t]he determination of whether a railroad has actually abandoned its right of way by acting upon and effecting its expressed intention to abandon is a question for a jury to decide." *Quarry Office Park Assoc. v. Philadelphia Electric Co.*, 394 Pa.Super. 426, 437, 576 A.2d 358, 363 (1990) (citations omitted). Thus, a directed verdict may be granted only where the facts are clear and there is

no room for doubt. *Cooke v. Travelers Ins. Co., supra,* 350 Pa.Super. at 471, 504 A.2d at 936.

█ In order to find that a right of way has been abandoned, there must be an intention to abandon, accompanied by external acts by which the intention is carried out. *Quarry, supra,* 394 Pa.Super. at 437, 576 A.2d at 363. This court has further stated:

> It is well established in Pennsylvania law that in order to show an abandonment of a right-of-way or easement created by deed, the evidence must clearly show some conduct on the ground by the holder of the right-of-way which manifests that he *intended* to abandon and give up permanently his right to use it. Such conduct must consist of some *affirmative act* on his part which renders use of the easement impossible, or of some *physical obstruction* of it by him in a manner that is inconsistent with its further enjoyment.

*Sabados v. Kiraly,* 258 Pa.Super. 532, 535, 393 A.2d 486, 487–88 (1978) (emphasis in original) (quoting *Hatcher v. Chesner,* 422 Pa. 138, 221 A.2d 305 (1966)).

█ The Thompsons introduced the following evidence to prove abandonment:

> (1) testimony by Alfred Smith, President of M & P, regarding the company's successful application to the ICC to abandon its rail line from Delta to York, the line that is the subject of the instant case. *See* N.T., February 4–6, 1991, at 54.
>
> (2) testimony of Walter Pohl, President of Pohl Corporation, regarding the salvage agreement between Pohl and M & P. *Id.* at 127–28.
>
> (3) testimony of Alfred Smith regarding the other property owners along the rail line seeking quitclaim deeds, and the letter that M & P sent to those property owners, as well as to appellees, regarding the procedure to be followed by each respective owner of property through which a right of way ran, in order to obtain a quitclaim deed. *Id.* at 64–71.

(4) authenticated photographs of the disputed portion of the rail line which had become overrun with weeds and brush. *Id.* at 338–39.

(5) testimony of Alfred Smith that the salvage agreement was intended to apply to the entire thirty-three miles of track, and that Pohl had begun dismantlement of the M & P tracks pursuant to the salvage agreement. *Id.* at 58, 61–62.

We must now consider whether this evidence was sufficient to raise a question of fact for the jury as to whether M & P abandoned its interest in the right of way running through the Thompsons' property.

A certificate of abandonment issued by the ICC may be evidence of intent to abandon. *Lacy v. East Broad Top R.R. & Coal Co.*, 168 Pa.Super. 351, 359, 77 A.2d 706, 710 (1951). When such evidence is presented, a question of fact is raised for the jury as to whether the holder of the right of way interest intended to abandon that interest. *Quarry, supra,* 394 Pa.Super. at 439, 576 A.2d at 364.

Similarly, the evidence that M & P entered into the salvage agreement with Pohl and that it had begun to execute quitclaim deeds to other property owners along the line raises a question of fact as to M & P's intent to abandon. The salvage agreement provided for the purchase, dismantlement and removal of "facilities, equipment, structures, and/or material." Salvage Agreement, September 22, 1986, at 1 ¶ 1. Specifically, Pohl was hired as an independent contractor to remove trackage, cut rails on each side of every public crossing, erect barricades across approaches to each bridge and remove ties from tracks. *Id.* at 8–9. As removal of the tracks and related facilities would permanently impair M & P's ability to use the right of way for operation of a railroad, such an agreement raises a question of fact for the jury as to M & P's intent to abandon. Further support can be derived from the fact that M & P had begun quitclaiming back to other property owners rights of way running across other land along the line.

Nonetheless, Preservation Society argues that even if a question of fact existed as to M & P's intent to abandon, the question of abandonment should not have been submitted to the jury because there was insufficient evidence to satisfy the second prong of the test—an affirmative act of abandonment. We disagree.

We recognize that "[m]ere nonuse of [a] right-of-way by its holder, no matter how long continued, cannot manifest an intention to abandon the right...." *Sabados, supra,* 258 Pa.Super. at 535, 393 A.2d at 487–88. However, in *Hatcher v. Chesner, supra,* our Supreme Court examined acts constituting more than mere nonuse:

> In the instant case, the plaintiff, or his predecessors in title by whose actions in relation to the property he is bound, planted or permitted a tree to grow on the land now owned by the plaintiff which obstructed use of the easement to a material extent. Further, the same parties placed, or permitted to be placed, a bar across the doors of the garage serving as the only entrance to the easement right of way. These acts, in our opinion, were not mere inaction, but rather affirmative acts on the part of the plaintiff and his predecessors in title, which were sufficiently inconsistent with further use of the easement to constitute an abandonment thereof and to bring the issue squarely within the rule of *Eagan v. Nagle* [378 Pa. 206, 106 A.2d 222 (1954)] [of external acts].

*Hatcher v. Chesner,* 422 Pa. at 143, 221 A.2d at 308. This court, in a more recent case, noted, "the crucial feature of the *Hatcher* case is the purposeful barring of the right-of-way entrance showing an intention on the part of the right-of-way holder to close it, give it up and abandon it...." *Sabados, supra,* 258 Pa.Super. at 536, 393 A.2d at 488.

Turning to the facts of the instant case, there was sufficient evidence of a purposeful affirmative act to raise a question of fact for the jury, and preclude the granting of a directed verdict. Ordinarily, failure to maintain a railroad line or allowing brush to grow is not considered an affirmative act of abandonment. *See Quarry, supra,* 394 Pa.Su-

per. at 438, 576 A.2d at 363; *Sabados, supra,* 258 Pa.Super. at 536–37, 393 A.2d at 488. However, we agree with the trial court that "the salvager beginning to remove the track materials could be sufficient to qualify as an external act." Opinion, July 18, 1991, at 4. *See Quarry, supra,* 394 Pa.Super. at 439, 576 A.2d at 364 (evidence that railroad had part of its tracks removed was external act raising question for jury as to whether removal was done in furtherance of abandonment). Accordingly, the trial court did not abuse its discretion in denying Preservation Society's motion for a directed verdict.

### III.

Preservation Society next contends that the trial court should have granted judgment notwithstanding the verdict ("JNOV") because as a matter of law, M & P could not have abandoned the right of way. Specifically, Preservation Society argues that (1) M & P could not lawfully abandon its interest until it received permission from the Pennsylvania Public Utilities Commission ("PUC") to remove the railway crossings; and (2) M & P engaged in activity that was inconsistent with abandonment.

It is well-settled that JNOV may be entered only in a clear case, where after viewing the evidence in the light most favorable to the verdict winner, no two reasonable minds would disagree that the verdict was improper. *Scullion v. EMECO Indus.,* 398 Pa.Super. 294, 298, 580 A.2d 1356, 1358 (1990) (citation omitted), *appeal denied,* 527 Pa. 625, 592 A.2d 45 (1991); *Robertson v. Atlantic Richfield Petroleum Products Co.,* 371 Pa.Super. 49, 58, 537 A.2d 814, 819 (1987) (citation omitted), *appeal denied,* 520 Pa. 590, 551 A.2d 216 (1988). Any doubts should be resolved in favor of the verdict winner. *Curran v. Philadelphia Newspapers, Inc.,* 376 Pa.Super. 508, 516, 546 A.2d 639, 643 (1988) (quoting *Geyer v. Steinbronn,* 351 Pa.Super. 536, 549, 506 A.2d 901, 908 (1986)), *appeal denied,* 522 Pa. 576, 559 A.2d 37 (1989). With this standard in mind, we proceed to consider each of Preservation Society's arguments.

### A.

Preservation Society first argues that, as a matter of law, M & P could not abandon its right of way until it applied for and received a PUC certificate granting permission to abandon the highway/railroad crossings. Additionally, Preservation Society argues that the trial court erroneously instructed the jury that M & P could abandon its right of way even though it had not obtained PUC authorization to abandon the railroad crossings.[4] These arguments are without merit.

▮▮▮ A PUC certificate granting permission to abandon railway crossings is not dispositive of whether or not a railroad has abandoned a right of way, as the certificate, without more, does not constitute abandonment. *Lacy v. East Broad Top R.R. & Coal Co., supra,* 168 Pa.Super. at 357, 77 A.2d at 710. "At most, the proceedings before the Commission constitute only the expression of the railroad's intention to abandon its right of way, the Commission's conditional approval of the plan of abandonment, and the consent of the Commonwealth thereto." *Id.,* 168 Pa.Superior Ct. at 358, 77 A.2d at 710. Moreover, the PUC does not, "and manifestly could not, determine or adjudicate the property or contractual rights of the parties...." *Id.* (citation omitted).

Preservation Society relies on *New York Central R.R. Co. v. Pennsylvania P.U.C.,* 188 Pa.Super. 647, 149 A.2d 562 (1959) for the proposition that a railroad is unable to abandon its property interest before obtaining PUC approval. Preservation Society's characterization of *New York Central's* holding is inaccurate. In *New York Central,* a panel of this court recognized that it is possible to complete

4. Preservation Society applied for and received permission from the PUC to abandon the line approximately one year after the instant complaint was instituted. Although M & P's application exempted the disputed portion of land, because it had conveyed its interest in that land to Preservation Society, that exemption does not affect our result, in light of our conclusion that M & P could lawfully abandon its interest before it received PUC permission, and, thus, that the jury verdict that M & P had no interest to convey at the time it quitclaimed its interest in the right of way to Preservation Society was correct.

abandonment without obtaining PUC permission, *see id.,* 188 Pa.Superior Ct. at 651, 149 A.2d at 564–565, but noted that the PUC has the power to later reverse the unauthorized abandonment by ordering the railroad to resume operations. *Id.,* 188 Pa.Superior Ct. at 650, 149 A.2d at 564. Thus, we disagree with Preservation Society that, as a matter of law, M & P could not have abandoned the right of way before obtaining a PUC certificate. In light of this conclusion, Preservation Society's argument that the court erroneously instructed the jury that M & P could have abandoned the right of way without first obtaining a PUC certificate is also without merit.

### B.

Preservation Society also argues that M & P engaged in conduct that was inconsistent with abandonment and, thus, JNOV should have been granted. Specifically, Preservation Society points to the fact that there was testimony that the tracks were cleared of brush and growth yearly and kept passable until they were removed, and, further, that specially-outfitted rail cars were used to stock the adjoining creek with fish. Thus, Preservation Society argues that in light of this activity, it was impossible for the Thompsons to satisfy the second prong of the abandonment test—an external act.

We have already concluded in section II, *supra,* that sufficient evidence was presented to raise a jury question with respect to both prongs of the test. Contradictory evidence was presented as to the extent of M & P's use of the rail line. The jury, as fact-finder, was free to believe all, some or none of that evidence. *See Williamson v. Williamson,* 402 Pa.Super. 276, 286, 586 A.2d 967, 972 (1991). Preservation Society's claim must fail because it is not so free from doubt that the jury's verdict was incorrect and thus, that JNOV should have been granted.

### IV.

Preservation Society next contends that the trial court committed reversible error with respect to the jury instruc-

tions. Specifically, Preservation Society claims that the trial court incorrectly stated the law as it applied to the brush and weeds that had grown on the tracks. We agree.

The standard of review with respect to jury instructions is well-settled in Pennsylvania:

A court's charge to the jury will be upheld if it adequately and accurately reflects the law and was sufficient to guide the jury in its deliberations.... In reviewing the court's charge for error, we must read the charge as a whole; error will not be predicated upon an isolated excerpt, instead it is the general effect of the charge that controls.... Furthermore, if a requested point for charge is already sufficiently and adequately covered in the trial court's jury instructions, it is not error to deny the requested point even though it may contain a correct statement of law.

*Brill v. Systems Resources, Inc.*, 405 Pa.Super. 603, 606, 592 A.2d 1377, 1378–79 (1991) (citations omitted). *See also Slavish v. Ratajczak*, 277 Pa.Super. 272, 419 A.2d 767 (1980). If a charge inaccurately describes the law, there is error. *Summit Fasteners, Inc. v. Harleysville National Bank & Trust Co., Inc.*, 410 Pa.Super. 56, 61, 599 A.2d 203, 206 (1991) (citations omitted), *appeal denied*, 606 A.2d 902 (1992).

The court instructed the jury on the issue of the brush and weeds as follows:

Let's look at the respective sides of the case. What does the Plaintiff say shows abandonment?

Well, first thing he shows is that there is a lack of maintenance. The railroad line was deteriorating. It was falling apart. They weren't using it anymore and he gives testimony from the Plaintiffs about the weeds are growing up and there is testimony, I believe, from Mr. Crowl [charter member of appellant Preservation Society] said something or suppose to have said something in the newspaper about it being overgrown and all the other testimony you heard about lack of maintenance.

. . . . .

Now, this lack of maintenance is actually possible. I suppose that strictly from the lack of a maintenance alone, you could find abandonment. The same way if you see a house or a car, you don't even know who owns it, they let it sit there. It sat there for 20 years. It's all rusted out. It was vandalized. It's abandoned as you classically know.

The mere fact alone could convince you alone that the owner of that car has abandoned it. By the same token here, the lack of maintenance, the weeds growing up and trees growing up through the railroad, it [is] grown to the point three feet thick and you couldn't put any railroad car through there no matter how small it was, you say, well hey they have abandoned it.

You will have to determine whether that testimony went to that extent. Even if you don't find it went to that extent, you can still use the testimony of abandonment of lack of maintenance rather along with all the other factors. It could be one piece of a larger total picture or it could be sufficient all by itself.

Obviously, for it to be sufficient by itself, it would have to be pretty overwhelming. There are a lot of other factors that come into play. So, we have with [a] railroad many other factors that go into play, that you wouldn't have with an abandoned car. For example, if you are going to find it strictly on abandonment and find it very [clearly] and take into account that there are other factors [that go] into it.

N.T., February 4-6, 1991, at 442-45.

 This instruction significantly misstates the law in this Commonwealth. Specifically, the trial court's repeated statement that evidence of the weeds and brush was sufficient in itself to constitute abandonment is incorrect. In *Quarry Office Park Associates v. Philadelphia Electric Co.*, 394 Pa.Super. 426, 576 A.2d 358 (1990), this court stated that the "failure to operate trains on the line and maintain the line are not indicative of an intent to abandon." *Id.*, 394 Pa.Superior Ct. at 438, 576 A.2d at 363. Moreover,

in *Sabados v. Kiraly,* 258 Pa.Super. 532, 393 A.2d 486 (1978), this court expressly stated:

> Defendant argues that permitting the trees and brush to grow up on the right-of-way area, from her house through the woods back to plaintiffs' property line, during the period of nonuse, is an 'affirmative act' by the holders of the right-of-way rendering its use impossible, and is an obstruction thereof by the right-of-way owner inconsistent with further use or enjoyment of the right-if-way, evidencing an intention to abandon it. *This contention is impossible to accept.* Allowing brush and saplings to grow on the right-of-way area which runs through the woods is not an act of active or affirmative character; instead, the growth results from merely doing nothing. These circumstances do not involve an affirmative act or placement of a physical obstruction or barrier, as is legally required for abandonment of a granted right-of-way....
>
> In the present case, none of the owners of plaintiffs' land ever intentionally barricaded the right-of-way. *In this case, growth of brush and small saplings in the roadway through the woods was but the natural closing in of nature upon an unused road, not the affirmative or intentional obstruction of the way by the owners of plaintiffs' land.*

*Id.,* 258 Pa.Superior Ct. at 536–37, 393 A.2d at 488 (emphasis added). This clearly contradicts the instructions provided by the court. Moreover, the court's example of a car or house left unattended for twenty years was misleading and, in our opinion, could have further confused the jury. There was no testimony in the case at hand that the weeds were left unattended for anywhere near twenty years. Nonetheless, reversal is not warranted unless the error, read in context of the jury charge in its entirety, would have prejudiced Preservation Society. *See Schecter v. Watkins,* 395 Pa.Super. 363, 374–75, 577 A.2d 585, 590–91 (court will not reverse on basis of isolated inaccuracies if jury charge as whole is not erroneous and did not prejudice complaining

party), *appeal denied*, 526 Pa. 638, 584 A.2d 320 (1990). Here, we find that there was a strong possibility that this inaccuracy could have prejudiced the jury's verdict. First, the trial court repeated three times its incorrect statement that the overgrown weeds were sufficient to constitute abandonment. This repetition served to emphasize the misstatement of the law to the jury. Furthermore, we cannot say that the jury would have found the second prong of the abandonment test to have been satisfied if it had not been incorrectly instructed on this factor. Accordingly, the court committed reversible error and thus, a new trial must be ordered.[5]

## V.

Lastly, Preservation Society contends that trial court mischaracterized the interest embodied in M & P's right of way and thus, applied incorrect standards governing abandonment. However, Preservation Society did not raise this issue in its post-trial motions. Thus, it is waived, and we cannot consider it on appellate review. *See Bryant v. Girard Bank, supra.*

For the aforementioned reasons, we reverse judgment and order a new trial.

Reversed; new trial ordered. Jurisdiction relinquished.

---

5. In light of our ruling as to this issue, we need not address Preservation Society's remaining allegations of error with respect to the jury instructions.