612 A.2d 493

Wesley E. DIBLE, Jr., and Norma Jean
Dible, his wife, Appellants,

v.

Richard T. VAGLEY, M.D., K. Sharma, M.D., John Hain, M.D., Forbes Health System, East Suburban Health Center, and/or Forbes Health System, Forbes Regional Health Center, Raymond Leen, M.D., and the Western Pennsylvania Hospital.

Superior Court of Pennsylvania.

Argued May 20, 1992.

Filed July 13, 1992.

304

Louis M. Tarasi, Jr., Pittsburgh, for appellants.

William D. Geiger, Pittsburgh, for Richard T. Vagley, M.D., appellee.

Deborah D. Olszewski, Pittsburgh, for Raymond Leen, M.D., appellee.

Before ROWLEY, President Judge, and MONTEMURO and HESTER, JJ.

MONTEMURO, Judge:

This is an appeal from a judgment entered in favor of appellees/defendants below in a medical malpractice action.[1]

In October of 1979, appellant Wesley Dible was referred to appellee Richard T. Vagley, M.D., a plastic surgeon, for examination and treatment of a lump behind his left ear. In November, the lump was excised, submitted to appellee Kusum Sharma, M.D., a pathologist, for diagnosis, and a skin graft was applied to the area. The laboratory report returned by appellee Sharma characterized the lump as squamous cell carcinoma, and noted that the margins of the surgical resection were free of tumor.

In February of 1981, another tumor was discovered in the area of the one previously excised. A biopsy of the growth by the pathologist, a Dr. Gregorio, produced an initial diagnosis of basal cell carcinoma, which was later altered to squamous cell carcinoma with basaloid features. Part of

---

1. We note with disapproval the fact that Pa.R.App.P. 124(a)(4) and 2118 have been ignored by various of the parties to this case.

the tumor was removed by appellee Vagley. Pathological examination of the tissue revealed that the margins were not clear, and that further treatment was necessary. Appellee Vagley testified that the surgery was incomplete because to have removed it all would have involved the simultaneous mutilation of most of appellant's ear, and appellant had expressed an unwillingness to submit to so radical a procedure. Appellee Vagley then referred appellant to appellee Raymond Leen, M.D., a radiologist, to determine the appropriateness of the tumor for radiation therapy. Appellee Leen had the specimen submitted to another pathological examination which resulted in another diagnosis of squamous cell malignancy. Appellant submitted to fifty-one radiation treatments by appellee Leen during the months of May, June and July of 1981.

In September of 1982, a tumor appeared in the canal of appellant's left ear, and was surgically removed. When the growth there recurred in early 1983, appellee Leen declined to subject appellant to further radiation treatments. Appellee Vagley then referred appellant to a dermatologist, Dr. Zitelli, for treatment by the method known as Moh's chemosurgery due to appellant's reluctance to undergo the disfigurement attendant upon total excision of the growth. However, appellant returned to appellee Vagley for reconstructive surgery after Dr. Zitelli had, in applying the Moh's technique removed most of the ear.

Suit was commenced in 1985, alleging negligent rendering of examination, treatment and diagnosis, and lack of informed consent in two respects: 1) in diagnosing the type of cancer appellant's tumors represented; and 2) appellees' failure to inform appellant of a viable alternative to radiation therapy. Appellant blames successive surgeries, deformity of his ear, severe emotional distress, tinnitus, and increased risk of metastasis [2] on radiation exposure characterized as unnecessary, and due only to appellees' derelic-

2. Since the 1983 tumor was removed, appellant has undergone further Moh's treatment of at least six subsequent growths. These were described by Dr. Zitelli as all attributable to sun exposure. (Videotape Deposition of 9.6.89)

tions. The jury found for appellees and against appellant, thus awarding no damages. This appeal followed.

Appellant has presented four issues for our review. Three of these claims concern alleged error in the trial court's instructions to the jury, the fourth is directed at various evidentiary rulings. We will address them all seriatim.

Appellant first argues that the trial court erred in refusing to order a directed verdict or to issue binding instructions on the matter of informed consent against appellees Vagley and Leen.

> When deciding whether to grant a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the non-moving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony. *Cooke v. Travellers Ins. Co.*, 350 Pa.Super. 467, 504 A.2d 935 (1986). A directed verdict can only be granted where the facts are clear and there is no room for doubt. *Id.* On review, we can reverse only if an abuse of discretion or error of law which controlled the outcome of the case occurred. *Bucchianeri v. Equitable Gas Co.*, 341 Pa.Super. 319, 491 A.2d 835 (1985)

*Boyce v. Smith–Edwards–Dunlap Company*, 398 Pa.Super. 345, 354, 580 A.2d 1382, 1386 (1990).

Further, "binding instructions may not be given if there is a question of fact properly submissible to the jury". *Hogan v. Bryn Mawr Hospital*, 250 Pa.Super. 109, 116, 378 A.2d 477, 481 (1977).

Herein, appellant requested a binding instruction on informed consent concerning the allegedly otiose and excessive radiotherapy. Specifically, he contends that such an instruction was compelled because despite knowledge of his fear of radiation, neither appellee made him aware of the confusion existing in the pathology reports on his ear, of the availability of the Moh's chemosurgery treatment which

eventually cured the tumor in his ear, nor of the low success rate of radiation therapy for cancers such as his.

> In order for consent to be considered informed, it must be shown that the patient was advised of "those risks which a reasonable man would have considered material to his decision whether or not to undergo treatment." *Sagala v. Tavares*, 367 Pa.Super. 573, 578, 533 A.2d 165, 167 (1987) *alloc. denied*, 518 Pa. 626, 541 A.2d 1138 (1988). The determination of what is material is a jury question, and in making that determination the jury must be supplied with expert information as to the nature of the harm attendant to the procedure, and the probability of that harm occurring. Thereafter, the jury must determine whether the type of harm and the probability of its occurrence is information which a reasonable patient would consider in deciding whether to undergo the medical procedure. *Id.*, 367 Pa.Superior Ct. at 578, 533 A.2d at 167.

*Moure v. Raeuchle*, 529 Pa. 394, 604 A.2d 1003, 1008 (1992).

■ Despite appellant's insistence that he was injured by lack of information, the informed consent doctrine has never been applied to situations in which the missing information was other than that affecting a surgical and/or operative procedure actually performed. This court, in *Kaskie v. Wright*, 403 Pa.Super. 334, 589 A.2d 213 (1991), explained the condition precedent to informed consent, a touching by the physician, by noting that consent to treatment involves a contract between doctor and patient conferring the patient's permission for physical contact with his body. Absent knowledge of the risks attendant upon the proposed procedure, the patient is presumed to have suffered a technical battery. Therefore the contractual principles which apply in the consent to treatment context are only germane to those situations involving actual performance, however excellent, of an unauthorized surgical or operative procedure. *Moure*, 529 Pa. at 404–05, 604 A.2d at 1008. *See, Gray v. Grunnagle*, 423 Pa. 144, 223 A.2d 663

(1966); *Boyer v. Smith,* 345 Pa.Super. 66, 497 A.2d 646 (1985).

 No such procedure was involved here, as there has been no argument advanced that the surgery actually performed was beyond that authorized by appellant. Even in the unlikely event that the definition of "touching" were to be strained sufficiently to include the radiation treatments, appellant acknowledges having been informed of their possible negative side effects, and nevertheless having permitted the treatment to occur. *Compare, Wu v. Spence,* 413 Pa.Super. 352, 605 A.2d 395. (1991) (informed consent doctrine found inapplicable to intravenous administration of drug treatment); *Sinclair by Sinclair v. Block,* 406 Pa.Super. 540, 594 A.2d 750 (1991) allocatur granted, 529 Pa. 623, 600 A.2d 538 (no specific informed consent necessary for use of forceps to accomplish delivery of child).[3]

Accordingly, we find that the trial court correctly declined to give the jury binding instructions on the issue of informed consent. *See also, Jozsa v. Hottenstein,* 364 Pa.Super. 469, 528 A.2d 606 (1987). Similarly, because this issue was clearly one to be decided by the jury, the motion for a directed verdict was properly denied.[4]

 It is also claimed that the trial court erred in its refusal to give binding instructions as to the liability of appellee Vagley. Appellant's claim is based on the allegation that appellee had violated the standard of care set forth by his own expert,[5] Ian Jackson, M.D. Specifically, appellant repeats Dr. Jackson's statement that radiation treat-

**3.** Even if the failure to inform appellant of the availability of Moh's treatment could in and of itself be faulted, there was no evidence presented by appellant to prove that had he been willing to undergo the radical surgery originally proposed by appellee Vagley, the same result would not have occurred. Appellant's reluctance to suffer the effects of conventional surgery resulted in both the radiation he feared, after which the tumor did not return in that specific area, and the mutilation he suffered from the appearance of tumor in an adjacent spot.

**4.** It is to be noted that appellees also moved that the jury be ordered to return a directed verdict.

**5.** Appellant also claims that the instruction was warranted due to a failure of the same expert to testify within the fair scope of his report filed during discovery. This issue, as it affects an evidentiary ruling, is discussed *infra.*

ment is contraindicated for cancer patients with bone and cartilage involvement. However, appellant provides us to no evidence that such involvement existed at the time appellant was referred for radiotherapy, of if it did exist, that appellee Vagley was aware of it. Moreover, the expert opined in his report, that in view of appellant's refusal of the radical resection necessary to completely remove the tumor, appellee Vagley's referral of appellant to a radiotherapist was proper.

As the expert's testimony evinced no disapprobation of the course actually followed by appellee Vagley, as opposed to what was to be done under hypothetical circumstances, that is, invasion of the bone by tumor, the court correctly denied appellant's request for binding instruction on this point.

█ Appellant next argues that the trial court erred by instructing the jury on the two schools of thought doctrine, which he asserts was unjustifiable where appellee Vagley's diagnosis of appellant's illness was in doubt.

In reviewing a trial judge's charge, the proper test is not whether certain portions taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party.

*Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 231, 489 A.2d 1291, 1305 (1985).

The purpose of the charge is "to remove from the jury's discretion those matters requiring medical expertise, and on which medical experts disagree among themselves." *D'Angelis v. Zakuto*, 383 Pa.Super. 65, 70, 556 A.2d 431, 433 (1989).

After having labored long to prove that appellees in this case caused him harm by treating his cancer with unnecessary and excessive radiation rather than Moh's chemosur-

gery, appellant now dismisses these claims, asserting that no disagreement exists among the experts as to the proper curative modalities, and contends in the alternative that injury derived from mis-diagnosis of the type of cancer from which he suffered.

In fact, what is clear from the testimony in this case is that both appellees Vagley and Leen relied for the diagnoses of appellant's cancerous growths upon pathology reports, and that at no time was evidence adduced at trial to the effect that the persons providing these reports, e.g., appellee Sharma, fell below the standard of care applicable to their speciality. Although evidence was presented that the initial diagnosis of squamous cell carcinoma was incorrect, appellant's experts concentrated on providing proof that Moh's chemosurgery would have been the most efficacious mode of treatment in appellant's case, and that subjecting him to radiotherapy was both unnecessary and dangerous. No expert testified on behalf of any party that the combination of surgery and radiation administered to appellant was not a viable method of treatment for skin cancer. To the contrary, Drs. Breitenbach and Zitelli were forthright in admitting that radiation is recognized therapy for either basal or squamous cell cancers. However, appellees' experts unanimously opined that, for various reasons, the Moh's procedure was not a common, conventional or in this case acceptable treatment modality. There were, therefore, two schools of thought presented to the jury concerning the treatment available for appellant's problem. Accordingly, the instruction was properly given.

Next, appellant assigns error to the trial court's refusal to recharge the jury on informed consent and the standard of care in reply to a question posed by the jury during deliberations. During deliberation, the jury directed the following question to the court:

Is it the responsibility of a doctor (Vagley) to be familiar with procedures (Moh's surgery) *outside of his speciali-*

*ty,* and to inform the patient of these procedures? (Emphasis in original).

The trial court response was as follows:

You have been charged on all of the law you need to answer the issues in this case.

In circumstances very similar to those at bar, our Supreme Court has held in *Nebel v. Mauk,* 434 Pa. 315, 253 A.2d 249 (1969),

While the fact that the question was asked would indicate that some confusion existed, a new trial should not be ordered unless it can be shown that the confusion worked to the detriment of the losing party.... In order to obtain a new trial the moving party must demonstrate in what way the trial error caused an incorrect result.

*Id.,* 434 Pa. at 318, 253 A.2d at 251.

█ Here appellant, alleging two components to the jury's query, decries the absence of recharges on informed consent and the standard of care. As to the former, for the reasons delineated in the first issue, any confusion cannot have operated to appellant's prejudice. As to the second, appellee Leen correctly points out that, in posing its question, the jury was seeking a factual determination from the trial court. Its refusal to step beyond the bounds of its duty did not redound to appellant's detriment.

Appellant's final assertion concerns several evidentiary rulings by the court. The first of these is that appellee Vagley was improperly allowed to introduce evidence in contradiction to a judicial admission in the answer responding to the second amended complaint. Appellant argues that Appellee Leen too was permitted to testify over objection to matters denying an admission in the opening statement of his counsel. Appellant also complains that appellee Vagley's expert was permitted to testify to matters beyond the scope of his report.

Judicial admissions were recently defined by this court as follows:

[A] judicial admission is an express waiver made in court or preparatory to trial by a party or his attorney, conceding for the purposes of trial, the truth of the admission. *Jewelcor Jewelers & Distributors, Inc. v. Corr,* 373 Pa.Super. 536, 542, 542 A.2d 72, 75 (1988). It has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted, so that the opposing party need offer no evidence to prove it and the party by whom the statement was made is not allowed to disprove it. *Jewelcor Jewelers, supra,* 373 Pa.Superior Ct. at 542, 542 A.2d at 75. A principal element of a judicial admission is that the fact has been admitted for the advantage of the admitting party, and consequently, a judicial admission cannot be subsequently contradicted by the party that made it. *Jewelcor Jewelers, supra,* 373 Pa.Superior Ct. at 543, 542 A.2d at 76.

*Nasim v. Shamrock Welding Supply Company,* 387 Pa.Super. 225, 228, 563 A.2d 1266, 1267 *allocatur denied* 525 Pa. 619, 577 A.2d 890 (1989).

To take these claims in the order presented, paragraph 18 of appellant's second amended complaint states that a specimen submitted to pathologist R.M. Gregorio, M.D. was diagnosed as squamous cell carcinoma, and that the margins were not evaluated. Appellee Vagley's answer rejoined that no analysis was performed on marginal tissue because no such analysis was sought, and that the specimen was diagnosed as basal cell carcinoma. Appellant argues that because a major issue in the case was the precise nature of his tumors, appellee's statement conceding him to have had basal cell carcinoma should be binding, and no testimony to the contrary should have been received at trial.

The trial court determined that appellee's response, so far from being an admission, was merely reportage of Dr. Gregorio's findings, and therefore without restrictive effect on appellee's testimony. We agree, and conclude that the trial court was correct in refusing to characterize this response as a judicial admission.

■ Appellant's contention with regard to appellee Leen's testimony concerns appellant's assertion that the radiation he received was not only unnecessary as a whole, but specifically that radiation to his neck and spine was superfluous, excessive and itself a health hazard. His claim that appellee Leen admitted this to be true is based upon the following remarks made by counsel in her opening statement:

> Dr. Leen is going to show you how he radiated Mr. Dible's ear. But the prophylactic radiation that he received was in this area to prevent the tumor from spreading into the lymph nodes and down into the neck. It is a recurrence of the basal cell cancer that Mr. Dible has today that he was trying to prevent. He was trying to prevent the metastatic disease that can move into your lymph system and kill you. In fact, that is what it did. This aggressive tumor is gone today. Mr. Dible does not have it and never did have it.

N.T. 9.13.89 Vol. I at 112–3.

Appellant's reasoning is that this statement admits his cancer was not squamous cell, that the cancer he did have was non-metastatic, and that the radiation administered to his neck and spine was therefore a priori inappropriate because basal cell tumors do not spread. It is argued that the trial court's reading of the same remarks, that appellant did not have a metastatic disease that could kill him, is a misinterpretation.

We find the statement fails to admit of one specific meaning, and conclude that remarks such as these, in which pronouns are burdened with ambiguous antecedents, and syntax is opaque, cannot qualify as admissions. The definition given above implies that to be an admission, a statement must at least be intelligible. To be an "express waiver," the subject matter of the waiver must be readily determinable. Such is not the case herein. The trial court therefore correctly, albeit for the wrong reason, permitted the testimony at issue.

■ Finally, appellant insists that reversible error occurred when the trial court permitted appellee Vagley's expert, Dr. Ian Jackson, to testify to matters outside the limitations set by his written report in violation of Pa.R.C.P. 4003.5(c).[6] Specifically, appellant complains that at trial Dr. Jackson was permitted to discuss the negative aspects of the Moh's chemosurgery technique, but that his report states only that it "is not a recognized method of treating skin cancers outside the United States," that he himself would not have applied it to appellant at any point in the management of his case, and that he would never have considered it. Anything beyond the simple rejection of this treatment modality, appellant claims, is fatally prejudicial.

> [I]n deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word "fair." The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pretrial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.

*Wilkes–Barre Iron v. Pargas of Wilkes–Barre,* 348 Pa.Super. 285, 290, 502 A.2d 210, 212–213 (1985).

We find that under this standard, the testimony of appellee's expert was within the fair scope of his report. Indeed, from the nature of his written comments, the necessity for ammunition to counter Dr. Jackson's obvious disapproval of the Moh's technique could easily have been anticipated. Therefore, we again find the trial court's ruling to have been appropriate.

6. Rule 4003.5(c) reads as follows:
 (c) To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule, his direct testimony at the trial may not be inconsistent with or go beyond the fair scope of his testimony as set forth in his deposition, answer to an interrogatory, separate report, or supplement thereto. However, he shall not be prevented from testifying as to facts or opinions on matters on which he has not been interrogated in the discovery proceedings.

For the foregoing reasons, we affirm the judgment entered in favor of appellees herein.

Judgment affirmed.

Concurring and dissenting statement by HESTER, J.

HESTER, Judge, concurring and dissenting.

I concur with the opinion of the majority, with the exception of the finding to the effect that the informed consent doctrine should not be required or extended to include radiation treatments. From that portion of the opinion, I respectfully dissent.