Hogg, Appellant, *v.* Kehoe-Berge Coal Company.

Argued October 6, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER, WRIGHT and WOODSIDE, JJ.

*Thomas L. Kennedy, Jr.,* for appellant.

*Neville B. Shea,* with him *Charles A. Shea,* for appellee.

OPINION BY RENO, J., December 29, 1953:

The Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, §301(g), as amended, 77 P.S.

§1401, provides: "The employer liable for the compensation provided by this article shall be the employer in whose employment the employe was last exposed to the hazard of the occupational disease claimed, regardless of the length of time of such last exposure: Provided, That when a claimant alleges that disability or death was due to silicosis, anthraco-silicosis, asbestosis or any other occupational disease which developed to the point of disablement only after an exposure of five or more years, *the only employer liable shall be the last employer in whose employment the employe was last exposed to the hazard of such occupational disease during a period of six months or more after the effective date of this act: and in such cases an exposure during a period of less than six months after the effective date of this act shall not be deemed an exposure.*" (Emphasis added.)

This section was analyzed and applied in *Silva v. Erie Forge Co.,* 149 Pa. Superior Ct. 251, 255, 27 A. 2d 727, and the conclusion was: "Thus, if an employe has not been in the employ of a particular employer and exposed to the hazard for six months or more after the effective date of the act, then he must, under the Act of 1939, seek relief against a prior employer in whose employment he has been exposed for a period of six months or more ending after the effective date of the act." See also *Holahan v. Bergen Coal Co.,* 164 Pa. Superior Ct. 177, 63 A. 2d 504.

Appellant worked in various coal mines for more than 25 years. Anthraco-silicosis totally disabled him on June 24, 1946. His last employer was Kehoe-Berge Coal Company, defendant, for which he worked from February 16, 1946, to June 21, 1946, only 4 months and several days. Nevertheless, the Workmen's Compensation Board awarded compensation, whose decision was reversed by the court below.

An amplified statement of the facts will be helpful. As stated, appellant worked in various coal mines for 25 years, but only his employment in what is known as the "Stevens Shaft Tract" is involved here. There he worked from August 30, 1945, to June 21, 1946. The mine is owned by the Lehigh Valley Coal Company which leased it to the Pittston-Duryea Coal Company on October 1, 1934. In turn, the Pittston concern, by a contract dated November 17, 1941, granted to Michael Guillorn and Dominick Panzitta, who afterwards became the Panzitta Coal Company, the privilege of mining and removing the coal in the Stevens Shaft. On July 24, 1945, the Pittston-Duryea Coal Company and Kehoe-Berge Coal Company were merged. Meanwhile the Panzitta people continued its operations until February 15, 1946, when it surrendered its mining privilege and Kehoe-Berge took over the operation. Thus, when appellant commenced his work at the Stevens Shaft his employer was the Panzitta concern for which he worked approximately 5½ months, and after February 16, 1946, he worked for Kehoe-Berge until June 21, 1946, the date of his last employment and exposure. Incidentally the Panzittas had formally rejected The Pennsylvania Occupational Disease Act, but Kehoe-Berge accepted its provisions on June 1, 1946.

So, while appellant's situs of employment was the Stevens Shaft after August 30, 1945, he worked there for two employers; the first of which rejected the Act; and for neither of them appellant worked the full period of 6 months. The Board based its award upon this conclusion: "However, where the claimant's employment is continuous in the *same* mine for the requisite period, although a *new* ownership intervenes, he is entitled to compensation from the employer who is the owner at the date when disability occurs. It is

our opinion that the statutory reference to liability of employers contemplates a change in *employment* by the employe rather than a change in ownership of the mine in which the employe is working. A new ownership acquires not only the chattels, equipment, fixtures and good will of the mine operation, but also assumes the contracts of employment as well, and the concomitant liabilities of wage scales, working conditions, seniority benefits and the workmen's and occupational disease compensation acts. An employe's status as such, with attending benefits, is not jeopardized by change in ownership, so long as there is no interference or change in the nature of his employment and substantially the same working conditions pertain." (The Board's italics.) This theory was rejected by the court below, and its judgment will be affirmed.

The Board's thesis, for all its plausibleness, lacks evidential support and legislative sanction. Kehoe-Berge did acquire Panzitta's equipment but it did not assume its contractual or statutory obligations, Panzitta having expressly agreed to pay the claims of its creditors. And, as Judge PINOLA, who wrote the opinion of the court below, sagely observed: "The Workmen's Compensation and Occupational Disease Acts do not follow the property as a covenant does land. They apply generally to every employer. Nor do the contracts of employment, the wage scales, and rights of seniority follow this property as a covenant does land. If they become part of the working conditions of a colliery under another operator, it will only be as the result of negotiations with the union."

Nor does the statute warrant the Board's conclusion. The Act speaks *only* of *employers,* not the place of employment, and imposes liability upon employers *only* to their own *employes.* Employers and employes stand in the relation of master and servant to each

other. Act, supra, §§103, 104, 77 P.S. §§1203, 1204. Only he is master who has the power to control the physical conduct of another in the performance of his service. Restatement, Agency, §2. Cf. *McGorry v. Sterling Supply Corp.*, 116 Pa. Superior Ct. 563, 176 A. 808; *Hoffman v. Montgomery Co.*, 146 Pa. Superior Ct. 399, 22 A. 2d 762; *Ramondo v. Ramondo*, 169 Pa. Superior Ct. 102, 82 A. 2d 40. Obviously, Kehoe-Berge had no power to control appellant while he worked for Panzitta. He was subject to Kehoe-Berge's control and was on its pay-roll only after his service for Panzitta ceased. That appellant's employers and the ownership and control of the business changed during the course of his employment conferred no right upon him recognized by the Act. "The only *employer* liable [to him] shall be the *last employer* in whose employment the *employe* was last exposed . . . during a period of *six months* or more . . .": Act, supra, §301(g). No reasoning, however fair or superficially cogent, can prevail against the plain and unambiguous words of the statute. "When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit": Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 P. S. §551.

The result is, of course, unfortunate for appellant. That he should have spent virtually all his working days in coal mines and at the last be without redress for a disease contracted in the service is deplorable. At the argument we were informed that there are frequent changes of coal mine operations, sometimes without notice to the employes. If this be true, it presents a problem for the General Assembly, not for us. Under the guise of construing a statute we cannot amend or extend it, however strongly a poignant case may arouse our sympathy.

Judgment affirmed.