Czepukaitis *v.* Philadelphia and Reading Coal and Iron Company et al., Appellants.

494

Argued March 17, 1964. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Arthur E. Ricchiuti,* Special Assistant Attorney General, and *Wilson H. Oldhouser,* Assistant Attorney General, with them *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellant.

*W. J. Krencewicz,* for appellee.

OPINION BY WATKINS, J., June 11, 1964:

This is an appeal from the order of the Court of Common Pleas of Schuylkill County reversing the

Workmen's Compensation Board in an occupational disease case. The appeal is by the Philadelphia and Reading Coal and Iron Company, defendant, and its insurance carrier, State Workmen's Insurance Fund, and Commonwealth of Pennsylvania, co-defendant.

The Referee and the Board found that the claimant's total disability did not occur within four years of the date of his last employment. The pertinent findings of fact are as follows:

"(a)  That the claimant had been employed by The Philadelphia & Reading Coal & Iron Company from 1926 to December 31, 1944 and then by the 'new' The Philadelphia & Reading Coal & Iron Company from January 1, 1945 to June 25, 1954; and that 'he worked in the mines for Ben Balkiewicz Coal Company, Mahanoy City, Pa., April 7, 8, 9, 1960.' (Second Finding of Fact.)

"(b)  That 'the seams of coal in the mines wherein claimant was employed were overlaid and underlaid with sandrock and constituted a silica hazard'. (Third Finding of Fact.)

"(c)  That claimant became totally disabled by anthracosilicosis on October 1, 1960. (Fourth Finding of Fact.)"

The provisions of the Occupational Disease Act of June 21, 1939, P. L. 566, 77 PS §1201 et seq., pertinent to this discussion are as follows:

§301(c) of the Occupational Disease Act, 77 PS §1401(c), P.P.:

"(c)  Compensation for the occupational diseases enumerated in this act shall be paid only when such occupational disease is peculiar to the occupation or industry in which the employe was engaged and not common to the general population. Wherever compensable disability or death is mentioned as a cause for compensation under this act, it shall mean only compensable disability or death resulting from occupa-

tional disease and occurring within four years after the date of his last employment in such occupation or industry."

§301(d) of the Occupational Disease Act, 77 **PS** §1401(d), P.P.:

"(d) Compensation for silicosis or anthraco-silicosis, and asbestosis, shall be paid only when it is shown that the employe has had an aggregate employment of at least two years in the Commonwealth of Pennsylvania, during a period of ten years next preceding the date of disability, in an occupation having a silica or asbestos hazard."

§301(g) of the Occupational Disease Act, 77 **PS** §1401(g), P.P.:

"(g) The employer liable for the compensation provided by this article shall be the employer in whose employment the employe was last exposed to the hazard of the occupational disease claimed, regardless of the length of time of such last exposure: Provided, That when a claimant alleges that disability or death was due to silicosis, anthraco-silicosis, asbestosis or any other occupational disease which developed to the point of disablement only after an exposure of five or more years, the only employer liable shall be the last employer in whose employment the employe was last exposed to the hazard of such occupational disease during a period of six months or more: And provided further, That in those cases where disability or death is not conclusively proven to be the result of such last exposure, all compensation shall be paid by the Commonwealth. An exposure during a period of less than six months after the effective date of this act shall not be deemed an exposure. The notice of disability or death and claim shall be made to the employer who is liable under this subsection, his insurance carrier, if any, and the Commonwealth."

We approve the following portion of the able opinion of the Court en banc as written by Judge DALTON:

"The foregoing findings of fact clearly establish that claimant meets every requirement of the Act. His 'compensable' (total) disability occurred within four years after the date of his last employment in a silica hazard, as required by Section 301(c), 77 P.S. Section 1401(c), P.P.; and he had an aggregate employment in a silica hazard for more than two years within the period of ten years next preceding the date of disability, as required by Section 301(d), 77 P.S. Section 1401(d), P.P.

"As previously stated, the Board expressly affirmed the referee's findings that claimant actually 'worked' in the Balkiewicz mine on April 7, 8, and 9, 1960, and that he was exposed to a silica hazard in that last employment in the Balkiewicz mine. Nevertheless, the Board refused to give proper legal effect to those factual findings. The board measured the statutory period of four years specified in Section 301(c) from June 25, 1954, the date of claimant's last employment with The Philadelphia & Reading Coal & Iron Company, thereby giving no legal effect to his subsequent employment in the Balkiewicz mine, and then concluded that the claim was barred by Section 301(c).

"To achieve that result, the Board relied in part upon subsection (g) of Section 301. However, subsection (g) 'applies only to employers and designates the one that shall be liable under certain circumstances': Silva v. Erie Forge Company, 149 Pa. Superior Ct. 251, 255. As authoritatively construed by the Superior Court, subsection (g) merely means that 'if an employe has not been in the employ of a particular employer and exposed to the hazard for six months or more after the effective date of the act, then he must, under the Act of 1939, seek relief against a prior employer in whose employment he has been exposed for

a period of six months or more ending after the effective date of the Act': Silva v. Erie Forge Company, supra, 255; Hogg v. Kehoe Berge Coal Co., 174 Pa. Superior Ct. 388, 390. Claimant therefore properly filed his claim against The Philadelphia & Reading Coal & Iron Company, by whom he had been employed for much more than six months after the effective date of the Act. But whether liability ultimately rests upon The Philadelphia & Reading Coal & Iron Company or upon the Commonwealth of Pennsylvania, it does not follow that claimant's subsequent and last employment with the Balkiewicz Coal Company in April 1960, may be disregarded in determining his eligibility for compensation under subsection (c). The latter subsection (c) requires nothing more than 'employment' in a hazardous occupation within four years prior to the occurrence of compensable disability, without specifying any particular length of such 'employment', and without any requirement that such 'employment' be by the employer who may be liable under subsection (g). Consequently, since subsections (c) and (g) deal with entirely different subject matters, the six months period referred to in subsection (g) cannot be read into subsection (c) in determining claimant's eligibility under the latter subsection: Valent v. Locust Coal Co., 57 Sch. L. R. 67.

"It must be emphasized again that the Board expressly affirmed the Referee's findings that claimant 'worked in' the Balkiewicz mine and was exposed to a silica hazard there for three days terminating on April 9, 1960 and that total disability occurred on October 1, 1960. Nevertheless, the Board questioned claimant's motive in accepting such employment, saying that there was 'intent to breathe life into a claim which was outlawed by Section 301(c) of the Act' and that 'three days employment in the industry in 1960 is an exposure which is insignificant.'

"The Board was completely wrong as a matter of law in its approach to the claim presented.

"First of all, no question of reviving an 'outlawed' claim was involved. Total disability by reason of silicosis did not occur until October 1, 1960, approximately six months after his last employment in the Balkiewicz mine. Until claimant became totally disabled, he had no claim at all: Section 301(c); and therefore nothing to revive.

"Secondly, there is not a shred of evidence in the record to show that claimant's motive in obtaining employment in the Balkiewicz mine was anything other than an honest effort to make a living for himself and his wife. He had been unemployed, as indeed had thousands of others in Schuylkill County, which we judicially noticed to be an economically distressed area, where opportunities for employment are limited. Except for two years work with the Philadelphia Valve Company, he had spent his entire adult life at work in the anthracite mines. Hence, it was quite understandable that he would accept work in the Balkiewicz mine when such opportunity was offered to him. The record shows that the only reason why he left that employment after three days was that he found the work 'too hard'. But that, too, is quite understandable, since he was then slightly more than 60 years old.

"But even if he had entertained a thought of preserving his eligibility for compensation in the event that he might at some future and uncertain day become totally disabled by silicosis—and there is no evidence that he had any such thought in mind—such motive would be completely irrelevant under the statute. The Occupational Disease Act does not make claimant's motive in seeking employment a relevant factor for qualification. Hence, it was not within the power of the Board to make motive a relevant factor by administrative edict. It is a firmly established principle of

law that 'if one has a legal right to do a particular thing, the law will not inquire into his motive for doing it'; City Stores Co. v. Phila., 376 Pa. 482, 488, citing a multitude of cases. Peter Czepukaitis had a perfect legal right to accept employment in the Balkiewicz mine, and he cannot be disqualified from compensation by a mere suspicion of his motives.

"Thirdly, it was not within the power of the Board to declare three days of actual employment in a silica hazard within four years prior to the date of disability to be 'insignificant' and insufficient to comply with Section 301(c). The only provision in the Act which requires a minimum length or tenure of employment for qualification is subsection (d) of Section 301, which requires 'an aggregate employment of at least two years—during a period of ten years next preceding the date of disability, in an occupation having a silica—hazard.' The claimant fully met that requirement. On the other hand, subsection (c) of Section 301 requires nothing more than 'employment' in an occupational hazard within four years before the occurrence of compensable disability. The Act does not fix any minimum length of 'employment' within the four-year period. If a claimant, who was otherwise qualified, worked only on the first day of the final four-year period, he would clearly be entitled to compensation under the Act. So long as a claimant works at all in an occupational hazard during the four year period, it is immaterial under the Act whether the 'employment' occurs at the beginning or at the middle or at the end of that period.

"Since the Legislature did not see fit to require any specific, minimum length of 'employment' within the four-year period preceding disability, it was not within the competence of the Board to supply an omission in the statute (Com. ex rel. Cartwright v. Cartwright, 350 Pa. 638, 645) and draw an arbitrary line between what the Board might consider to be sufficient or insuffi-

cient. The Board has no power 'to legislate or by interpretation to add to legislation matters which the legislature saw fit not to include': Com. ex rel. Fox v. Swing, 409 Pa. 241, 246.

"Section 301(c), as enacted by the Legislature, is clear and unambiguous. Hence, there is no occasion to resort to rules of statutory interpretation; the statute must be given its plain and obvious meaning: Schneider v. Scranton, 330 Pa. 507, 510-511; Com. ex rel. Cartwright v. Cartwright, supra.

"The right to workmen's compensation is purely statutory. There is no public policy as to compensation except that which is stated in the Act: DeFelice v. Jones & Laughlin Steel Corp., 137 Pa. Superior Ct. 191, 192. The wisdom, reasonableness or equity of the statutory provisions is exclusively for the judgment of the Legislature. It is for the Legislature alone to fix the terms and conditions under which a claimant may qualify, and those terms and conditions may not, under the guise of construing the statute, be amended, extended or restricted, whether the result compelled by the Act in a particular case may appear to be harsh: Hogg v. Kehoe-Berge Coal Co., 174 Pa. Superior Ct. 388, 393; or whether that result may appear to be generous: Decker v. Mohawk Mining Co., 265 Pa. 507, 508. Where, as here, a claim comes within the plain language and letter of the compensation statute, neither the Board nor the Courts may deny the claimant's right to the compensation which the Legislature has granted."

Order affirmed.

DISSENTING OPINION BY WRIGHT, J.:

Prior to April 7, 1960, claimant had not been employed in the mining industry for almost six years. He then purportedly worked three days for a local coal company. It is my view that the Board of Review,

sustaining the decision of the Referee, properly held that this period was "insignificant to establish bona fide exposure and employment". The record clearly supports the conclusion of the compensation authorities, and it should not be disturbed. Good faith is an important factor in evaluating exposure and employment. To affirm the opinion below in this case may well deluge the Commonwealth with contrived claims.

MONTGOMERY, J., joins in this dissenting opinion.