**John PRIMIANO**

v.

**CITY OF PHILADELPHIA, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 19, 1999.

Decided Oct. 29, 1999.

Alan C. Ostrow, Philadelphia, for appellant.

No appearance entered for appellee.

Before COLINS, President Judge, and FLAHERTY, J., and NARICK, Senior Judge.

FLAHERTY, Judge.

The City of Philadelphia (Philadelphia or City) appeals from the order of the court of common pleas of Philadelphia County (trial court) which denied Philadelphia's post-trial motion seeking a judgment notwithstanding the verdict (JNOV). We affirm.

■ The trial court summarized the facts as follows:

Plaintiff, John Primiano, was a customer of the City of Philadelphia Water Department. He claimed damage to 'approximately $200,000 of personal property' when the Defendant's water meter failed, thus allowing the unchecked discharge of water into Plaintiff's basement. Plaintiff noted that the property was the site of a commercial establishment.

Plaintiff alleged that failure of the said meter was a result of wear and tear, and negligent maintenance by the City of the water meter and housing thereof. Following the loss, the City removed the meter, did not permit Plaintiff to inspect it, and then lost, materially altered, or salvaged for resale the meter; thus, the cause of the failure could no longer be determined.

The case was tried before this Court and a jury. The jury found that Defendant's negligence was a substantial factor in bringing about Plaintiff's harm. Further, the jury found the amount of damage sustained by Plaintiff's property in the basement to be in the amount of $45,000. Finally, in assessing comparative negligence of Plaintiff, the jury found Plaintiff's to be 49%, and Defendant's to be 51%. The verdict entered for Plaintiff on the jury's verdict sheet was in the amount of $22,950.

The municipal Defendants filed post trial motions, seeking a judgement N.O.V. The City, they argued, is immune from liability for plaintiff's cause of action, relying upon the Political Subdivision Tort Claims Act, Act of Oct. 5, 1980, No. 142, P.L. 693, 42 Pa.C.S. §§ 8541–64, specifically § 8542 ('the Act'). They note the burden on plaintiffs in a tort claim, to prove liability of a political subdivision based on exceptions to immunity as defined under the Act. Defendants claimed that Plaintiff John Primiano did not meet that burden in this case.

On June 12, 1998, after consideration of the post trial motions filed, after oral argument and thorough review of the written submissions of the parties, the Defendant's Post Trial Motions were denied, and judgement was entered in favor of John Primiano in the amount of $22,950 with interest, against the Water Department of the City of Philadelphia.

Trial court slip op. at pp. 1–2. From the trial court's order denying its post-trial motion for JNOV, Philadelphia appeals to this court.[1]

1. Appellate review over a trial court's order denying a post trial motion for JNOV is limit-

The sole issue which Philadelphia presents is: Did the trial court err as a matter of law by refusing to grant judgment to the City, where a City-owned utility facility failed and caused property damage, but the facility was located in private property and not located within a right-of-way, and the utility facilities exception to governmental immunity requires that the facility not only be owned by a local agency but also be located within rights of way.[2] Philadelphia asserts that it was immune from suit by virtue of the popularly called Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541–8564 and that the exception to governmental immunity found at 42 Pa. C.S. § 8542(b)(5) is not applicable as a matter of law.

The so-called "utility service facilities" exception to governmental immunity, found at 42 Pa.C.S. § 8542(b)(5) provides in relevant part that

**(b) Act which may impose liability.—** The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . . .

(5) *Utility service facilities.—* A dangerous condition of the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights of way, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had *actual notice* or could be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

Philadelphia argues essentially two points. First, Philadelphia notes that ex- ceptions to governmental immunity are to be narrowly construed and strictly interpreted, citing *inter alia, White v. School District of Philadelphia,* 553 Pa. 214, 718 A.2d 778 (1998). Next Philadelphia appears to concede that there was a dangerous condition of "the facilities of . . . water . . . systems," i.e., the water meter, which was "owned by the local agency" i.e., Philadelphia, but contends that the exception is inapplicable because the water meter was not "located within rights-of-way". Philadelphia argues that "[r]ights-of-way, especially when narrowly construed do not refer to a private building in which a local agency utility facility is located. Nor do rights-of-way refer to the legal right of the local agency to enter on another's land to repair or remove local agency property." Philadelphia's brief at p. 9. In support of its contention, Philadelphia cites *County of Allegheny v. Dominijanni,* 109 Pa. Cmwlth. 484, 531 A.2d 562 (1987).

In *Dominijanni,* a landowner experienced a landslide. He was sued and he joined as an additional defendant, the sanitary authority. The landowner alleged that the sanitary authority had installed on his property a sewer pipe which was found to be broken and leaking and that the leaking water from the sewer pipe caused the landslide. In addition, the landowner averred that the sanitary authority had failed to "establish a right of way and/or easement through the original defendant's [the landowner's] property for the installation of said sanitary sewer pipe, thereby becoming willful trespassers which deprives them of any protection afforded by any immunity act." *Dominijanni,* 531 A.2d at 563. The sanitary authority filed preliminary objections to being joined as an additional defendant, asserting that it was immune from suit pursuant to 42 Pa.

ed to determining whether the trial court abused its discretion or committed a legal error. *Swartz v. Hilltown Township Volunteer Fire Company,* 721 A.2d 819 (Pa.Cmwlth. 1998)

**2.** By order of this court dated March 10, 1999, the appellee herein was precluded from filing a brief in this matter for failing to comply with a prior order of this court directing the appellee to file a brief by a date certain.

C.S. § 8541. The trial court sustained the preliminary objections reasoning that the landowner could not as a matter of law establish that the utility facilities exception found at 42 Pa.C.S. § 8542(b)(5) applies since the landowner averred that the sanitary authority had not established a right of way and thus could not satisfy the statutory requirement for the utility facilities exception to apply, namely that the sewer pipe was "located within the rights-of-way" of the sanitary authority.

This court reversed the trial court's order granting the sanitary authority's preliminary objections and rejected the trial court's reasoning. This court stated that

> [a] claim that a right-of-way has not been established does not mean that the sewer pipe in question is not "located within rights-of way." A definition of the term "rights-of-way" does not appear in the definitions included in the statute providing for sovereign and governmental immunity and the exceptions to it, *see* 42 Pa.C.S. § 8501, and there is no case law interpreting its meaning in this context.
> Black's law dictionary 1191 (5th ed.1979) defines "right-of-way" as follows:
>> Term "right-of-way" sometimes is used to describe a right belonging to a party to pass over land of another, *but it is also used to describe the strip of land* upon which railroad companies construct their roadbed, and when so used, *the term refers to the land itself, not to the right of passage over it....* (Emphasis added [by the *Dominijanni* court].)

Webster's Third New International Dictionary 1956 (1986) also defines "right-of-way" as "the land used by a public utility" as well "a legal right of passage over another person's ground."

*Dominijanni*, 531 A.2d at 564–65. This court went on to note that the averments of the landowner in *Dominijanni* that the sewer authority had not established a right of way and/or easement through his land merely meant that the sewer authority had not in fact exercised its power to formally and legally acquire the legal right of passage over another's ground, but such averment did not also mean that the sewer pipe which the sewer authority had placed on the landowner's property was not "located within rights-of-way." This court stated that "[w]e conclude that the term 'rights-of-way', as used by the legislature in the phrase 'located within rights-of-ways', refers to the strip of land on which the local agency has constructed its utility service facilities, and not to the exercise of its legal right to do so." *Dominijanni*, 531 A.2d at 565.[3]

Philadelphia argues that the "water meter in the present case was located inside the basement of Primiano's privately owned property, and was not located on a 'strip of land' on which or under which, the City had constructed its utility service facilities. Therefore as a matter of law, Primiano's claim does not fall within the utility facilities exception to governmental immunity." Philadelphia's brief at p. 9. We disagree. Of course, the water meter was located on a "strip of land" on which the City had constructed or placed the water meter which it owned, even if that

---

**3.** To the extent that Philadelphia's argument that rights of way do not "refer to the legal right of the local agency to enter on another's land to repair or remove local agency property" (Philadelphia's Brief at p. 9) relies upon this court's statement in *Dominijanni*, 531 A.2d at 565 that the term rights-of-ways "refers to the strip of land on which the local agency has constructed its utility service facilities, [and] not to the exercise of its legal right to do so", Philadelphia misunderstands our language. That statement in *Dominijanni* does not mean that the phrase "rights-of-way" does not in any way refer to the local agency's exercise of its legal right to enter upon another's land, rather that statement should be understood to mean rights-of-way includes both concepts, both the land itself and the legal right. Thus, properly understood, the statement in *Dominijanni* should read that the term rights-of-way refers to the strip of land on which the local agency has constructed its utility service facilities and **not only** to the exercise of its legal right to do so.

strip of land was located in Primiano's basement. Thus, because the City had constructed or placed its water meter facility on a "strip of land" even though the strip of land was owned by Primiano, the City's water meter was located "within rights-of-way" pursuant to *Dominijanni.* Hence, the meaning of the term "rights-of-way," as explained by this Court in *Dominijanni,* compels the conclusion that the water meter was "located within the rights-of-way" within the meaning of the language of 42 Pa.C.S. § 8542(b)(5). Philadelphia acknowledges as much when it states "[u]tility facilities exist in, under or over, some piece of land. They do not exist in cyberspace." Philadelphia's Brief at p. 9.[4]

Philadelphia argues however that for this court to interpret the phrase "rights-of-way" in such a fashion runs afoul of the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501–1991. Specifically, Philadelphia argues that

> [i]nterpreting the phrase "rights-of-way", as used in the utility facilities exception, to include the inside of private property, would render the phrase meaningless. Every place that has a local agency-owned utility facility would be considered a "right of way".... If all places that contain utility facilities are "rights-of-way", then every local agency-owned utility facility would be included within the exception. There would be no need for the statutory phrase "and located within rights-of-way" because every place that has a utility facility would be a right of way. The Statutory Construction Act prohib-

its courts from interpreting statutes in a way that makes words used in statutes meaningless or mere surplusage. 1 Pa. C.S. § 1922.

Philadelphia's Brief at pp. 9–10.

■ We disagree that our interpretation runs afoul of 1 Pa.C.S. § 1922 which provides that "[i]n ascertaining the intention of the General Assembly in the enactment of a statute, the following presumptions, among others, may be used: ... (2)[t]hat the General Assembly intends the entire statute to be effective and certain." We find that 1 Pa.C.S. § 1922 is simply not applicable herein. Principles of statutory construction are applicable only when the language of the statute is ambiguous. *Czepukaitis v. Philadelphia & Reading Coal & Iron Co.,* 203 Pa.Super. 493, 201 A.2d 271 (1964). The specific language of § 1922 speaks about "ascertaining the intention of the General Assembly" however, there is no need to resort to trying to ascertain the intent of the General Assembly when the language clearly manifests what the legislature intended, or in other words, where there is no ambiguity. *Big B Mining Co. v. Department of Environmental Resources,* 142 Pa.Cmwlth. 215, 597 A.2d 202, 203 (1991), *allocatur denied,* 529 Pa. 652, 602 A.2d 862 (1992)("It is axiomatic that we cannot rely upon congressional or legislative intent when there is no ambiguity in the statute being interpreted.").

In the case at bar, Philadelphia does not argue that the language of the statute is ambiguous. Indeed, Philadelphia suggests quite the contrary. *See* Philadelphia's

---

4. Our holding today, making Philadelphia responsible for damage caused by water meters which it owns gives effect not only to 42 Pa.C.S. § 8542(b)(5) but also gives effect to the language of its own Water Department Authority Regulation # 45, Section 3 which provides in relevant part that

> [o]n installation, the City meter becomes the property of the City and the City thereupon undertakes to maintain, repair and replace the meter except as provided for in [Section] 2(d) above so that it will operate

in accordance with accepted utility standards for meter performance.

Philadelphia's brief at p. 5. Section 2(d) provides in relevant part that after the water meter is placed on a landowner's property, the "property owner thereafter shall be responsible for safeguarding the meter and seals and shall pay for necessary repairs and replacements due to his failure to provide adequate protection to the meter and seals from theft, vandalism, freezing, etc...." Philadelphia's brief at p. 4.

brief at p. 8 wherein Philadelphia states: "[a]s evident from the **clear language of the exception,** in order for a claimant to recover under this exception, the claimant must prove a dangerous condition of water facility systems not only owned by the City of Philadelphia but also located within rights-of-ways" (emphasis added).[5] As Philadelphia does not assert that the language of the exception is ambiguous, it follows that utilizing 1 Pa.C.S. § 1922 in order to rely upon the presumptions located therein so as to ascertain the intent of the General Assembly is wholly inappropriate as the intent of the General Assembly is manifest in the plain meaning of the language written in the exception. Thus, our holding today with regard to the phrase "located within the rights-of-way" is not necessarily inconsistent with 1 Pa. C.S. § 1922 because that provision is sim-

ply not applicable given the way Philadelphia presented this case.

Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this 29th day of October, 1999, the order of the Court of Common Pleas of Philadelphia County, docketed at No. 3398, January Term 1996, Civil Trial Division, and dated June 12, 1998, is hereby affirmed.

---

**5.** Even though Philadelphia strives mightily to avoid the plain meaning of rights-of-way as including both the strip of Primiano's land on which it placed the water meter and the right of Philadelphia to so place the meter, we do not find Philadelphia's arguments establish that the language of the exception is ambiguous, thus justifying resort to the principles enunciated in 1 Pa.C.S. § 1922.