**In Re: CONDEMNATION BY THE COUNTY OF LANCASTER, Lancaster County, Pennsylvania, of an approximate 930.2 acres of land with improvements thereon situated at Lancaster County, Pennsylvania for the purpose of use as park and recreation land (Property of Pennsylvania Lines LLC).**

**Appeal of: County of Lancaster.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2006.

Decided Oct. 30, 2006.

Matthew J. Créme and Bernadette M. Hohenadel, Lancaster, for appellant.

Scott T. Wyland, Harrisburg, for appellee, Conestoga Township.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The County of Lancaster (County) appeals from an order of a two-judge panel of the Court of Common Pleas of Lancaster County that sustained preliminary objections to a declaration of taking filed by the County in regard to a strip of land that formerly was part of a railroad line known as the "Enola Branch" owned by Pennsylvania Lines LLC (PRR), running approximately twenty-three miles westward from the Lancaster/Chester County border. PRR was a subsidiary of Consolidated Rail Corporation (Conrail) and was merged into Norfolk Southern Railway Company (Norfolk Southern) in August 2004.

Preliminary objections to the taking were filed by the Townships of Sadsbury, Eden, Bart, Providence, Maric and Conestoga (together, Townships) and by PRR. The County questions whether the trial court erred in concluding that the exercise of eminent domain was not appropriate and that the rail line had not been abandoned and erred in determining that the County could not take the place of the Townships as to maintenance duties imposed by the Pennsylvania Public Utility Commission (PUC).

I

Although the declaration of taking at issue was filed on June 16, 2004, there is a long history of proceedings involving this land. In 1989 Conrail filed notice with the Interstate Commerce Commission (ICC) of its intent to abandon rail service on the Enola Branch. In February 1990 the ICC authorized termination of rail service subject to conditions including that Conrail not transfer the property or take steps to alter the historical integrity of bridges on the line until completion of a historic review. The historic review process commenced but was not completed. In 1993 the ICC authorized Conrail to abandon service but made no mention of the historic review.

In 1993 Conrail also applied to the PUC for abolition of the line's rail-highway crossings. In those proceedings, after extensive negotiations, Conrail and seven townships and the Pennsylvania Department of Transportation entered into two Stipulations of Settlement (Stipulations) that provided for abolition of the rail-highway crossings along the Enola Branch, the transfer of Conrail's property to the townships, payments to them totaling $1.4 million for assumption of future maintenance responsibilities for crossing structures and demolition of some structures determined to be safety hazards. The PUC approved the Stipulations on October 9, 1997, and this Court affirmed on appeal by a private group seeking to acquire the land to develop a trail. *Friends of Atglen–Susquehanna Trail, Inc. v. Pennsylvania Public Utility Commission*, 717 A.2d 581 (Pa. Cmwlth.1998).

On January 18, 2005, the Surface Transportation Board (STB), the successor to the ICC, accepted a memorandum of agreement and concluded the historic review process and authorized abandonment of the rail service. On February 17, 2005, Norfolk Southern issued a letter exercising its granted authority to abandon the line. On June 16, 2004, the County filed its declaration of taking to exercise its power of eminent domain to acquire the Enola Branch property for use as park and recreation land. PRR and the Townships filed preliminary objections.

The trial court first pointed out that under Section 303 of the former Eminent Domain Code[1] the act was intended to provide an exclusive procedure and law to govern all condemnation of property for public purposes and the assessment of damages: "Provided, however, That nothing in this act shall be deemed to affect, vary, alter or modify the jurisdiction or power of the Public Utility Commission of the Commonwealth of Pennsylvania...." Also, Section 2402 of The County Code, Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 2402, provides: "[T]he right-of-way of a railroad company shall not be acquired or occupied without the consent of the company owning or operating or in possession of said railroad."

Pursuant to Section 2702 of the Public Utility Code, *as amended*, 66 Pa.C.S. § 2702, the PUC is vested with exclusive authority to regulate railroad grade crossings. Under Section 316, 66 Pa.C.S. § 316, whenever the PUC shall make any rule, regulation, determination or order, it shall be prima facie evidence of the facts found and shall remain conclusive upon all parties affected unless set aside or modified on judicial review. The trial court referred to *Primiano v. City of Philadelphia*, 739 A.2d 1172, 1175 (Pa.Cmwlth. 1999), where this Court quoted Black's Law Dictionary 1191 (5th ed.1979) for a definition of "right-of-way":

> Term "right-of-way" sometimes is used to describe a right belonging to a party to pass over land of another, but it is also used to describe the strip of land upon which railroad companies construct their roadbed, and when so used, the term refers to the land itself, not to the right of passage over it.... (Emphasis deleted.)

It noted that actual abandonment is required for a railroad estate to terminate, citing *Lacy v. East Broad Top R.R. & Coal Co.*, 168 Pa.Super. 351, 77 A.2d 706 (1951).

In *Buffalo Township v. Jones*, 571 Pa. 637, 646, 813 A.2d 659, 664 (2002), the Supreme Court held that in evaluating whether a railroad abandoned property, a court must consider "whether there was an intention to abandon the property interest, together with external acts by which such intention is carried into effect." This may consist of affirmative acts that render use of the easement impossible or some physical obstruction of it; mere nonuse by a railroad is not abandonment. Id. Filing with the federal authority for permission to abandon is not enough in itself; this may evidence intent to abandon, but it must be accompanied by external acts. *Lacy*. Receiving a PUC certificate to abandon rail highway crossings is not dispositive of whether a railroad has abandoned a right-of-way; the certificate without more does not constitute abandonment. *Thompson v. Maryland & Pennsylvania R.R. Pres. Soc'y*, 417 Pa.Super. 216, 612 A.2d 450 (1992).

The Townships first argued that the County was prohibited from exercising eminent domain power over this railroad right-of-way by Section 2402 of The County Code, and the County argued that the Enola Branch was no longer a right-of-way. The trial court concluded that the property remained a right-of-way. Although the County contended that Norfolk Southern's letter of February 2005 consummating the abandonment constituted consent to remove the property from protected status under Section 2402, the trial court found Buffalo Township to be very

---

1. Act of June 24, 1964, Special Sess., P.L. 84, *as amended, formerly* 26 P.S. § 1–303, repealed by Section 5 of the Act of May 4, 2006, P.L. ——. Section 1 of the 2006 Act enacted the consolidated Eminent Domain Code, 26 Pa.C.S. §§ 101–1106, effective in 120 days.

instructive. There a railroad company filed an intention to abandon service on a line with the ICC and made an agreement for salvage of the rails. It conveyed the property to the salvage company, which then conveyed to a township, although both deeds reserved a right in the railroad to reenter for future railroad use. Some residents along the line erected barriers, contending that the railroad had abandoned the property and that it reverted to them. The Supreme Court affirmed a permanent injunction against such owners' conduct, applying the analysis above.

■ The trial court indicated that in the present case the rails were removed and all railroad service was discontinued. These actions were deemed to be evidence of intent to abandon; however, only actual abandonment terminates the estate of a railroad. The court concluded that, as in *Buffalo Township*, those actions were taken in connection with negotiation for the transfer of the property. The railroad entered into agreements to transfer that required applications to abandon service, and it intended to hand the property over to the Townships along with $1.4 million in exchange for their performing maintenance. The court stated that the railroad continued to assert its interests in the property, which remained a railroad right-of-way that could not be taken by eminent domain.

The trial court addressed the Townships' second argument, which was that even if the use of eminent domain was proper the taking was still improper inasmuch as the County did not request permission from the PUC to assume responsibility for the grade crossings. The PUC had exercised its jurisdiction over crossings under Section 2702 of the Public Utility Code, and the County's assertion that it could simply "step into the shoes" of the Townships would violate Section 316.

There is no authority for the County to take all of the property because of the restrictions imposed on the Townships by the PUC's approval of the Stipulations. The Stipulation was a contract, and the court saw no support for the proposition that the County could simply take over for the Townships without the approval of the parties.

II

■ The Court's review of the trial court's order sustaining preliminary objections is limited to whether the trial court committed error of law or abuse of discretion and whether any necessary findings of fact are supported by substantial, competent evidence. *In re Condemnation of Permanent Right–of–Way*, 873 A.2d 14 (Pa.Cmwlth.2005). The County maintains that the trial court erred in concluding that the property had not been abandoned. It asserts that abandonment of a right-of-way involves interplay of principles of general property law, federal regulatory law and state regulatory law. When the railroad decided to discontinue service it applied to the ICC. Authority to abandon was granted in 1993, but then historic review was needed; therefore, ICC/STB jurisdiction continued. With the STB authorization to abandon and the consummation of that in February 2005, the jurisdiction of the STB ended, as all parties agree. In *Hayfield Northern R.R. Co., Inc. v. Chicago & N.W. Transp. Co.*, 467 U.S. 622, 104 S.Ct. 2610, 81 L.Ed.2d 527 (1984), the Court stated that ICC jurisdiction ended after a final order without further conditions.

The County asserts that the trial court confused abandonment issues with issues of property ownership, equating continued ownership of property with the existence of a railroad right-of-way. It states that the issue of abandonment addresses termi-

nation of use, not divestiture of ownership, arguing that the trial court's reliance upon *Buffalo Township* is misplaced. In that case the railroad held a right-of-way that carried a right of reversion to the original owners. The railroad quitclaimed the property but reserved a right to reenter the land and to place it back into service as a rail line; also an application for interim use as a trail was submitted. The County represents that those are the facts that the Supreme Court concluded showed intent to retain control of the rail line. It argues that the court did not hold that a property is a "right-of-way" so long as a railroad retains ownership. Here the railroad no longer runs a rail line. It has not expressed intent to resume service; rather, it has expressed intent to divest ownership of the land to the Townships. Therefore, the right-of-way has been abandoned. This conclusion is in accord with Buffalo Township, which requires a showing of intent to abandon a property interest together with external acts by which such intent is carried into effect. Cessation of service, removal of all railroad equipment, no expression of intent to resume use or ownership, STB approval of abandonment combined with the external acts of termination of service support a determination of abandonment.

■ After abandonment pursuant to STB authority, the right to use the property for common carrier functions ceased; the railroad would have to obtain a new certificate of public convenience to operate a rail line. In *New Mexico v. United States Trust Co. of New York*, 172 U.S. 171, 19 S.Ct. 128, 43 L.Ed. 407 (1898), the Supreme Court recognized that "right-of-way" may mean both the intangible right of passage over land or the tract of land itself. The County concludes that "right-of-way" refers to the use of property in a railroad's possession, not to the property itself. It posits that legislative intent in enacting Section 2402 of The County Code was to protect existing railroads. If a railroad does not own, operate or possess a railroad on specific property, then there is no prohibition against the use of eminent domain.

■ Norfolk Southern argues that the trial court's ruling is based upon state law although the issue of railroad abandonment is exclusively controlled by federal law. Pursuant to 49 U.S.C. § 10501(b), the jurisdiction of the STB is exclusive over "(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State," and, except as otherwise provided in the legislation, the remedies provided "with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." Unless the ICC (now STB) attaches post-abandonment conditions to a certificate of abandonment its jurisdiction ends, and the property becomes subject to ordinary processes of state law, including condemnation, quiet title and contract actions. *Hayfield Northern R.R. Co.* Although PRR and Norfolk Southern asserted initially that continuing STB jurisdiction meant that the property remained a right-of-way not subject to condemnation under Section 2402 of The County Code, the grant and exercise of authority to abandon constituted fully abandoning the railroad line.[2]

**2.** Norfolk Southern quotes from the STB's January 18, 2005 order, which acknowledged that the County recently filed a declaration of taking to acquire and preserve the land for recreational trail purposes, supported by Friends of Atglen–Susquehanna Trail, Inc., and stated that once the historic preservation condition was fully removed and final aban-

The trial court, it contends, erroneously concluded that no actual abandonment had taken place, failing to recognize that Norfolk Southern's exercise of its grant of authority to abandon was the final word on the issue. At the time of *Buffalo Township*, without a formal consummation of a grant of authority to abandon a line, the Supreme Court was left to decide the issue. Norfolk Southern states that in *Buffalo Township* the court relied upon the reservation of rights to reenter for railroad purposes as determinative. In addition, it maintains that reliance on *Lacy* was misplaced because regardless of whether the PUC had any authority regarding railroad service abandonment in 1951, it no longer does under 49 U.S.C. § 10501(b)(2). Further, the *Lacy* court's analysis was based upon the railroad's having a conditional fee interest, which is not the case here. Also state authority to authorize and set conditions for the abolition of rail-highway crossings is distinct from the STB's exclusive jurisdiction to regulate rail service. *Wheeling & Lake Erie Ry. Co. v. Pennsylvania Public Utility Commission*, 778 A.2d 785 (Pa.Cmwlth.2001).

The Townships in response (not joined by Eden Township) assert that the railroad right-of-way still exists and that the County may not exercise a right of eminent domain over it under Section 2402 of The County Code. They state that the trial court held that there has been no abandonment of the real property estate of the railroad right-of-way under Pennsylvania law, although the rail line is no longer in use and rail service has been abandoned under federal law. The Townships refer to the two meanings of "right-of-way," *i.e.*, a right of passage over which a rail line operates (the meaning that the County advocates) or the strip of land itself that a railroad company takes upon construction of its railroad, citing *Brookbank v. Benedum–Trees Oil Co.*, 389 Pa. 151, 131 A.2d 103 (1957). The property at issue here is a "right-of-way" in the latter sense because the railroad owns the property as a fee simple estate, not as a right of passage. In *Brookbank* the court held that the precise terms of the conveyance to a railroad created only a conditional fee for railroad use, not title in fee simple, and that when such use terminated the land reverted to holder of the fee. Here the property is owned by the railroad in fee simple, the rails and ties are gone but the railroad bed remains, former crossing structures remain that the PUC has ordered to be maintained and Amtrak still uses the property for a permanent easement for an electric power line.

The County cites no authority for its assertion that a railroad right-of-way is abandoned under general property law once it is no longer used for railroad uses. The Townships argue that the STB's determination that the railroad line had been abandoned under federal regulations is irrelevant to the question of whether the right-of-way still exists under state law. In *Buffalo Township* the court held that abandonment of a railroad line pursuant to federal law does not constitute termination of a railroad right-of-way. Under Section 2402 of The County Code a "right-of-way of a railroad company shall not be acquired or occupied without the consent of the

donment authority was granted and exercised, there would be no ongoing STB involvement to impede the County's ability to seek to condemn the property and to create a trail or a park under state law. STB Docket No. AB–167 (Sub–No. 1095X), p. 4; R.R. 36a. Norfolk Southern omits reference, however, to the statement immediately following that the Townships formally challenged the proposed taking under Pennsylvania law and that "the merits of the County's condemnation action is a matter for the Pennsylvania courts." *Id.*, p. 5; R.R. 37a.

company owning or operating or in possession of said railroad." The Townships interpret this to require only that the right-of-way be "of" or belonging to a railroad company, not that it be used to provide railroad service.

## III.

Based on its review, the Court concludes that the trial court did not err or abuse its discretion. Contrary to the arguments of Norfolk Southern, the STB did not purport to issue a decision that would have the effect of deciding the validity of the proposed taking by the County. *See* n2 above. The STB clearly did exercise its jurisdiction to authorize abandonment of rail service on the Enola Branch line, and Norfolk Southern exercised its granted authority in its letter of February 17, 2005, but the STB plainly recognized that the validity of the County's attempted taking was a matter to be decided in the state courts under state law. *Id.*

■ The Townships are correct that the Pennsylvania cases relied upon by the trial court do analyze the question of abandonment in terms of the property estate in a railroad right-of-way. The analysis is similar to that for deciding abandonment of property in general. As stated in *Buffalo Township*, there must be a showing of intent to abandon the property interest together with a showing of external acts by which such intention is carried into effect. The trial court noted that it has been held that application with a federal authority for the right to abandon is some evidence of intent, but it is not sufficient to establish abandonment. *Lacy.* Further, even securing a certificate from the PUC to abolish rail-highway crossings does not constitute abandonment. *Thompson.*

Although the County and Norfolk Southern assert otherwise, the Court's decision in *Buffalo Township* that the right-of-way was not abandoned did not turn solely on the fact that the railroad had reserved a right to reenter in the future for railroad use. The Supreme Court stated that the railroad took certain actions suggesting an intention to abandon such as filing a request with the ICC to abandon rail service and agreeing to salvage of the rails, but it continued:

> However, Conrail took other steps evidencing the contrary intent, such as participating in ongoing negotiations with Buffalo Township for the use of the land and expressly retaining the right to reenter the land for future railroad use in the deed.... In fact, these latter factors demonstrated Conrail's intent to *retain* an interest in the right-of-way.

*Buffalo Township*, 571 Pa. at 647–648, 813 A.2d at 665–666. The Court agrees that the trial court correctly concluded that the situation in this case is similar, albeit without the reservation of a right to reenter. The railroad did not intend to abandon its property interest. Rather, it acknowledged its duties as holder of the property interest, even though it certainly was planning to cease railroad service, and it acted responsibly to apply to the proper authority, namely the PUC, for approval to abolish the rail-highway crossings along the line. Ultimately, that proceeding also produced the Stipulation by which the railroad could convey its property interest as part of an agreement subject to PUC approval for abolition. Accordingly, the railroad retained its property interest in the right-of-way, and a taking by a county was prohibited by Section 2402 of The County Code.

■ Having concluded that the trial court was correct on the primary issue, the Court need not dwell on the question of whether the County is barred from condemning the Enola Branch line because the property is subject to a PUC order

that does not include the County as a party. Nevertheless, the Court acknowledges the County's assertions that the PUC's 1997 order approving the Stipulations was outside its jurisdiction, that by condemning it took control before the Stipulations took effect, that the PUC does not have authority over the entire line, just rail crossings and that the PUC does not have authority to prevent the exercise of eminent domain. The trial court found no case authority, and the County cited none, for the proposition that the County may simply substitute itself for the Townships in the Stipulation without prior approval of the parties or of the PUC. Allowing the declaration of taking to stand would impermissibly interfere with the PUC's exclusive statutory authority to regulate abolition of rail-highway crossings.

This Court already has affirmed the PUC's exercise of its authority in *Friends of Atglen–Susquehanna Trail.* The proposed taking could render the entire multi-year PUC proceeding in vain, and it would violate the requirement of Section 316 of the Public Utility Code that PUC orders remain conclusive upon all parties unless modified on judicial review. Section 303 of the Eminent Domain Code preserved PUC authority. The County's unilateral substitution of itself for the Townships without PUC involvement would alter a PUC order in violation of the Public Utility Code, the Eminent Domain Code and The County Code. According, the Court affirms the order of the trial court.

## ORDER

AND NOW, this 30th day of October, 2006, the order of the Court of Common Pleas of Lancaster County is affirmed.