J-A22002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOSHUA R. SIRCHIO AND ALLISON D. SIRCHIO, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| v. | : | |
| | : | |
| COREY MACDOUGALL | : | |
| | : | |
| Appellee | : | No. 3444 EDA 2016 |
| | : | |

Appeal from the Judgment Entered January 5, 2017
in the Court of Common Pleas of Montgomery County
Civil Division at No.:  2013-33448

BEFORE:   BOWES, J., LAZARUS, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                          Filed July 20, 2018

Appellants, Joshua R. Sirchio and Allison D. Sirchio, appeal from the judgment entered after the jury's defense verdict in their suit for personal injury and loss of consortium.  Mr. Sirchio maintains that he slipped on black ice on the sidewalk of Appellee, Corey MacDougall, due to Appellee's negligence.  Both Appellants maintain that the lighting in the area was inadequate to see the ice.  On appeal, they challenge the trial court's admission of testimony from the defense's expert engineer on lighting conditions, as beyond the fair scope of his pre-trial written report.  They claim they were misled and prejudiced, and seek a new trial.  We conclude that the trial court committed no abuse of discretion or error of law in admitting the

_____
*  Retired Senior Judge assigned to the Superior Court.

now-challenged testimony, and Appellants were not improperly prejudiced by it. Accordingly, we affirm.

This is a slip-and-fall case, asserting premises liability. Mr. Sirchio alleged that on or about January 28, 2013, about 10:15 p.m., he sustained multiple fractures and related leg injuries when he fell on black ice on the sidewalk adjacent to the house owned by Appellee in Conshohocken.[1] The fractures required surgery, including the insertion of screws and plates for stabilization. Mr. Sirchio called his wife after he fell. Mrs. Sirchio and her father (who was staying with them on a visit from Texas), came and picked Mr. Sirchio up.

At the time he fell, Mr. Sirchio was walking home from watching a Flyers' hockey game on T.V. at a friend's house. He conceded that he had a couple of alcoholic drinks while watching the game, but denied that he was impaired at all on the walk home. (*See* Deposition of Joshua Sirchio, 5/29/14, at 43-44, 54).[2]

_____

[1] The exact date is somewhat problematic and inconsistently referenced throughout the record as either January 26, January 28, or January 29, 2013. The complaint states the date of the incident was January 26, 2013. (*See* Complaint, 11/14/13, at 2 ¶¶ 3, 4). Appellants' brief gives the date as January 28, 2013. (*See* Appellants' Brief, at 8). Mr. Sirchio remembered he fell on a Saturday. January 26, 2013 was a Saturday. In any event, the date is not dispositive of any of the issues raised in this appeal, and neither party raises the discrepancy as an issue on appeal.

[2] Mr. Sirchio testified that he was returning home early after his wife called and told him she was sick from her pregnancy. Mrs. Sirchio had nausea,

The weather was not in substantial dispute. It had snowed earlier that evening. It had also snowed the night before. It stayed below freezing both days. There is no dispute that Appellee had shoveled the earlier snow off the sidewalk. Mr. Sirchio testified that on his way home that night he would walk on the sidewalk where the snow had been shoveled, and walk on the grass next to the sidewalk where it had not.

Appellants' theory of the case, in essence, was that Mr. Sirchio slipped and fell "on an isolated batch of ice" [sic] on the sidewalk formed by the run-off of water or melted snow from a downspout on Appellee's house, which re-froze in the very cold temperature. (Appellants' Brief, at 9; *see also id.* at 8-13; Deposition of Joshua Sirchio, at 50-52). The downspout was directed to flow into a flowerbed. However, if the outflow exceeded the capacity of the flowerbed to absorb it, water continued to flow downward, pooled in a buckle of the sidewalk and in sub-freezing temperature became ice. Appellants maintain that Appellee had notice of the dangerous condition (the pooling and freezing of run-off from the downspout to the sidewalk), but failed to correct it.

In his deposition, Mr. Sirchio testified that the lack of lighting contributed to his fall. (**See** Deposition of Joshua Sirchio, at 50-52; also

_____

commonly known as "morning sickness" even though it can occur at any time of the day. Mrs. Sirchio identified her more severe form as *hyperemesis* [*gravidarum*]. (**See** N.T. Trial, 6/20/16, at 58, 84).

quoted in Appellants' Brief, at 9-10). He stated that he could not see the patch of ice because there was not much lighting. (*See id.*). Mr. Sirchio maintained that a very large tree blocked the light from the street lamp across the street, even though it was January and there were no leaves on the tree. (*See id.*).

Both parties engaged professional engineers. Appellants retained David J. Littlewood, P.E. of Fleisher Forensics. Appellee engaged Daniel M. Honig, P.E. of Structures Consulting Engineers. Both Mr. Littlewood and Mr. Honig prepared written reports. Both also testified at trial. Mr. Littlewood's report emphasized perceived violations of various building codes. (*See* Littlewood/Fleisher Forensics Report, 8/31/15, at 9-13). Mr. Honig's report, while denying the violation of applicable building code provisions, concluded generally that the fall "simply occurred" because Mr. Sirchio failed to exercise proper caution on an exterior walkway in inclement weather. (Honig/Structures Consulting Engineers Report, 1/12/16, at 8).

Both reports noted the assertions of the parties concerning the lighting, ambient and augmented, and the respective opinions of the parties on whether the bare tree obscured the lighting from the street lamps or not. (*See, e.g.*, *id.* at 1).

Both engineers state in their reports that Mrs. Sirchio testified that when she arrived to pick up her husband, the ice was not visible until she used the flashlight on her cellphone. (*See* Littlewood/Fleischer Forensics Report,

8/31/15, at 2; ***see also*** Honig/Structures Consulting Engineers Report, 1/12/16, at 2; both cite the deposition of Allison Sirchio, 5/29/14, at 29).[3]

Based on the available record, there is no dispute that Appellants' counsel, in his opening statement at trial, told the jury "it is extremely difficult to see when" the water from the downspout freezes on the sidewalk. (N.T. Trial, 6/20/16, at 14).[4] He added that the jury would hear evidence that "you can not see any light really in this area. That it is extremely dark." (***Id.*** at 15).

At trial, during direct examination, counsel for Appellee, Attorney Eamon Merrigan, questioned Mr. Honig as to whether the patch of ice was "discernible" or "conspicuous." (***See*** N.T. Trial, 6/21/16, at 32-35). Counsel for Appellants, Attorney Brian D. Kent, objected that Mr. Honig's report did not include the term "conspicuous" or "conspicuity." (***See id.*** at 35).

---

[3] After diligent search, we are unable to find Mrs. Sirchio's original deposition in the record before us. There are many problems with this record. (***See*** n.4 immediately below; ***see also infra*** at 8-10).

[4] We note with regret that in addition to the transcript order problem identified by the trial court in its opinion (which forms the basis of Appellants' first question presented on appeal), both Appellants' Appendix and Reproduced Record appear to have been assembled in virtually random order. Neither contains a table of contents or a comprehensive index even though the Reproduced Record runs over four hundred pages and the Appendix, over seven hundred pages. Because of these problems, discussed more fully below, we cite the testimony and other references provided in Appellants' Appendix and Reproduced Record, to the extent we are able. (***See infra*** at 8-10).

Attorney Merrigan conceded that the Honig report did not include the term "conspicuous" but argued that the term was a general reference to the conclusions on page eight (which concluded the fall was due to Mr. Sirchio's failure to exercise proper caution).

After initially sustaining Attorney Kent's objection, the trial court decided to give Merrigan "a little leeway," allowing him to ask a general question on the topic. (*Id.* at 35). Attorney Kent responded, "Fair enough." (*Id.*).

Mr. Honig concluded that the walkway had been properly cleared, and any ice, water or combination would have been "conspicuous" and "discernible," enabling Mr. Sirchio to proceed with caution. (*Id.* at 36).

On cross-examination, Attorney Kent questioned Mr. Honig's assumptions, and challenged his methodology. (*See id.* at 38-62). He elicited the admission that Mr. Honig had not visited the accident scene at night or otherwise, to ascertain lighting conditions, as Mr. Littlewood had. Mr. Honig further admitted he did not take specific measurements of the lighting conditions, which he maintained were not required for his evaluation. Instead, he testified that he reviewed photographs supplied by defense counsel, and looked the property up on "Google Street View/s." (*Id.* at 39).

Counsel for Appellants even got Mr. Honig to admit several times that Appellee had the dripping water condition repaired by diverting the water flow under the sidewalk, but not until after the accident occurred. (*See e.g., id.*

at 40, 49, 50). Defense counsel Merrigan finally stipulated to the repair. (***See***

***id.*** at 50).[5]

At the conclusion of testimony, the jury rendered a verdict which found both parties negligent as a factual cause of the harm, in the following proportions: Appellee MacDougall, 35% negligent; and Appellant Joshua Sirchio, 65% negligent. The jury awarded no damages. (***See*** Verdict Sheet, dated 6/22/16, and filed 6/24/16, at 1-3). The jury's attribution of 65% comparative negligence to Mr. Sirchio precluded recovery. (***See*** Trial Court Opinion, 3/09/17, at 2); ***see also*** 42 Pa.C.S.A. § 7102(a), Comparative Negligence; ***Terwilliger v. Kitchen***, 781 A.2d 1201, 1209 (Pa. Super. 2001) ("Pennsylvania's comparative negligence statute does not bar recovery by the

_____

[5] We note that Pennsylvania Rule of Evidence 407, Subsequent Remedial Measures, provides:

> When measures are taken by a party that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible against that party to prove:
>
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose such as impeachment or−if disputed−proving ownership, control, or the feasibility of precautionary measures.

Pa.R.E. 407.

plaintiff as long as the plaintiff's causal negligence is not greater than that of the defendant").

Appellants timely appealed, after the denial of their post-sentence motion.[6] However, the trial court found that they did not follow the proper procedures to order transcripts for the appeal. (**See** Trial Ct. Op., at 3). As a result, the trial court found all issues waived, and requested that this Court quash the appeal on that basis. (**See id.** at 3, 4). Based on this reasoning the trial court did not address the merits of the case.

Appellants present two questions for our review on appeal:

> 1. Whether Appellants have waived the merits of their appeal for failing to request the transcripts necessary for this Honorable Court to address the merits of their appeal when Appellants requested the necessary documents in November of 2016 and have taken steps to supplement and correct the certified record sent to the Superior Court?

> 2. Whether the [t]rial [c]ourt abused its discretion/committed an error of law when it denied Appellants' Motion for Post Trial Relief and abused its discretion/committed an error of law when it permitted the Appellee's liability expert, Daniel M. Honig, P.E, to testify at trial to opinions well beyond the scope of his expertise and pre-trial report as well as speculate to the lighting conditions at the time of the incident at issue since he had never been to the incident site, let alone at night to view the lighting and visibility conditions, despite Appellants' interrogatories requesting any and all pre-trial expert opinions and when said testimony clearly influenced the outcome of the trial?

(Appellants' Brief, at 6).

---

[6] Appellants filed a court-ordered statement of errors on December 6, 2016. **See** Pa.R.A.P. 1925(b).

On Appellants' first issue, we note that following the trial court's opinion, their counsel attempted to supplement the record. Counsel represents that he "adequately requested" transcripts, (Appellants' Brief, at 31), and "completely complied" with the applicable rules. (*Id.* at 29). However, this explanation finds little support in the record, and, as noted, is contradicted by the findings of the trial court.

Counsel argues in the alternative that even if the transcript request was defective, the appeal is valid and should proceed. (*See id.* at 30). This is a misreading and unwarranted extension of Pa.R.A.P. 904(c), unsupported by reference to any other controlling authority. Counsel's argument is unpersuasive.[7] Furthermore, counsel cites the **dissent** in ***Commonwealth v. Hawk***, 562 A.2d 858, 859 (Pa. Super. 1989), for his misreading of the law to the effect that it is the burden of the trial court, not the Appellant, to obtain an omitted transcript. (*See* Appellants' Brief, at 32-33).

Counsel for Appellants complains of "a lack of communication and guidance from the [c]ourt[.]" (*Id.* at 33). Counsel proffers a stipulation signed by counsel for both parties to correct or modify the record pursuant to Pa.R.A.P. 1926(b)(2). While counsel for Appellee takes no position on this issue, he acknowledges the stipulation and states that Appellants appear to have corrected any issues with the record. (*See* Appellee's Brief, at 13 n.1).

---

[7] At the outset, counsel repeatedly uses "proscribe" incorrectly as a synonym for "prescribe." (*See* Appellants' Brief, at 28, 30, 31).

Accordingly, we are most sympathetic to the issues and problems identified by the trial court. We could dismiss this appeal solely for Appellants' failure to comply with the pertinent rules. **See** Pa.R.A.P. 1911(d) (appellate court may take appropriate action for failure to comply with procedures for request of transcript, including dismissal).

Nevertheless, in view of the stipulation of the parties, counsel's efforts to respond to the trial court's opinion, and the absence of any dispute about the accuracy of the presentation of those facts (in contrast to the interpretation of those facts), to avoid further delay and the prospect of repetitious appeals, in the interests of justice and judicial economy we will "regard as done that which ought to have been done" and decide this appeal on the merits based on the record now before us. ***Grossi v. Travelers Personal Ins. Co.,*** 79 A.3d 1141, 1145 n.1 (Pa. Super. 2013), *appeal denied*, 101 A.3d 103 (Pa. 2014) (citation omitted).

Appellants' second question is a hybrid of two issues, asserting error or abuse of discretion in the admission of testimony at trial by Appellee's expert Daniel Honig on lighting conditions at the time of the accident, and error or abuse of discretion in the subsequent denial of their motion for a new trial. (***See*** Appellants' Brief, at 6). Appellants characterize the challenged testimony as outside of the fair scope of Mr. Honig's expert report. They claim prejudice, asserting they were prevented from presenting a meaningful

response to the testimony, and they "were misled as to the appropriate response." (*Id.* at 25). We disagree.

Our standard of review is well-settled.

We review a trial court's evidentiary decisions for an abuse of discretion. *See Schmalz v. Mfrs. and Traders Trust Co.,* 67 A.3d 800, 802–03 (Pa. Super. 2013); *Smith v. Paoli Mem'l Hosp.,* 885 A.2d 1012, 1016 (Pa. Super. 2005) ("Decisions regarding admission of expert testimony, like other evidentiary decisions, are within the sound discretion of the trial court.") (citations omitted). In this context, "[d]iscretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Schmalz, supra* at 803 (citation omitted).

"To reverse the trial court, the [S]uperior [C]ourt must consider all the evidence in the light most favorable to the appellee and conclude that the verdict would be changed if another trial were granted." *Woodard v. Chatterjee*, 827 A.2d 433, 440 (Pa. Super. 2003) (citation omitted).

The fair scope rule, addressed in Pa.R.C.P. 4003.5(c), provides that an expert witness may not testify on direct examination concerning matters

which are either inconsistent with or go beyond the fair scope of matters testified to in discovery proceedings or, as here, included in a separate report.[8]

> Thus, [e]xperts may testify at trial concerning matters which are within the fair scope of a pretrial report. The avoidance of unfair surprise to an adversary concerning the facts and substance of an expert's proposed testimony is the primary purpose of the rule requiring that testimony be within the fair scope of the pretrial report.

**Walsh v. Kubiak**, 661 A.2d 416, 419-20 (Pa. Super. 1995) (*en banc*), *appeal denied*, 672 A.2d 309 (Pa. 1996) (citations and quotation marks omitted).

In **Wilkes–Barre Iron & Wire Works, Inc. v. Pargas of Wilkes– Barre, Inc.**, 502 A.2d 210 (Pa. Super. 1985), this Court noted that:

> [I]t is impossible to formulate a hard and fast rule for determining when a particular expert's testimony exceeds the fair scope of his or her pretrial report. Rather, the determination must be made with reference to the particular facts and circumstances of each case. The controlling principle which must guide is whether the purpose of Rule 4003.5 is being served. The purpose of requiring a party to disclose, at his adversary's request, "the substance of the facts and opinions to which the expert is expected to testify"

---

[8] Rule 4003.5. Discovery of Expert Testimony, provides in pertinent part as follows:

> (c) To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule, the direct testimony of the expert at the trial may not be inconsistent with or go beyond the **fair scope** of his or her testimony in the discovery proceedings as set forth in the deposition, answer to an interrogatory, separate report, or supplement thereto. However, the expert shall not be prevented from testifying as to facts or opinions on matters on which the expert has not been interrogated in the discovery proceedings.

Pa.R.C.P. 4003.5(c) (emphasis added).

is to avoid unfair surprise by enabling the adversary to prepare a response to the expert testimony. *See Augustine v. Delgado*, 332 Pa. Super. [194] at 199, 481 A.2d [319] at 321 [ (1984) ] ("Pa.R.Civ.P. 4003.5 favors liberal discovery of expert witnesses and disfavors unfair and prejudicial surprise"); *Martin v. Johns–Manville Corp.,* 322 Pa. Super. [348] at 358, 469 A.2d [655] at 659 [ (1983) ] ("[W]e have found experts' reports to be adequate . . . when the report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness.")

In other words, in deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word "fair." The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pretrial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.

*Id.* at 212–13.

Here, mindful of this controlling authority, we have no difficulty or hesitation in concluding that the trial court committed no error of law and acted well within the proper scope of discretion in admitting the challenged testimony. On independent review, we agree with the learned trial judge's observation at the hearing on the post-verdict motion that "I have a hard time [at the claim of surprise] because lighting was pretty much a big issue during this entire trial[.]" (N.T. Post-Trial Motions, 8/18/16, at 14).

The record before us supports the trial court's skepticism. Mr. Sirchio testified in his deposition that he believed the limited lighting conditions, including a large tree, which he asserted blocked light from the streetlamp, contributed to his fall. (*See* Deposition of Joshua Sirchio, at 50-51).

Appellants' professional engineer, David J. Littlewood, noted in his report both Allison Sirchio's testimony that ice was not visible until she used the flashlight feature of her cellphone, and Joshua Sirchio's own testimony of minimal lighting. (***See*** Littlewood/Fleischer Forensics Report, 8/31/15, at 2; ***see*** Expert Report of David J. Littlewood, P.E., at 2, 8). Appellee's engineer, Daniel M. Honig, P.E., acknowledged these assertions about lighting in his own report. (***See*** Honig/Structures Consulting Engineers Report, 1/12/16, at 1, 2, 7).

When the trial court allowed defense counsel to ask a general question on the issue of visibility of black ice, Appellants' counsel responded, "Fair enough." (N.T. Trial, 6/21/16, at 35). He did not object again.

"A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake." ***Harman ex rel. Harman v. Borah***, 756 A.2d 1116, 1122 (Pa. 2000) (citations omitted).

Here, Appellants did not suffer prejudice from the trial court's ruling. Their counsel had ample opportunity to cross-examine Mr. Honig, and did so. (***See*** N.T. Trial, 6/21/16, at 38-62). He questioned Mr. Honig's assumptions, and challenged his methodology. He elicited the admission that Mr. Honig had not visited the accident scene at night, or ever, to ascertain lighting conditions. Mr. Honig further admitted he did not take specific measurements of the

lighting conditions, which he maintained were not required for his evaluation. Instead, he reviewed photographs supplied by defense counsel, and looked the property up on Google. Counsel conducted a capable and productive cross-examination. Appellants were not deprived of the opportunity for "a meaningful response" to Mr. Honig's testimony. (Appellants' Brief, at 49).

Appellants' assertion that the jury may have accorded Mr. Honig's testimony greater weight than other evidence because he is an expert is bald speculation, unsupported by the record or controlling authority. Mr. Littlewood had already testified as Appellants' expert. Counsel did not recall him.

"As we have held many times, it is the province of the jury to weigh questions of fact and assess the credibility of expert witnesses." *M.C.M. v. Milton S. Hershey Med. Ctr. of PA State Univ.*, 834 A.2d 1155, 1159 (Pa. Super. 2003), *appeal denied*, 856 A.2d 834 (Pa. 2004) (citation omitted). Here, when polled at the request of Appellants' counsel, the jurors unanimously confirmed their verdict. (**See** N.T. Trial, 6/22/16, at 153-55).

Viewing the evidence in the light most favorable to the Appellee, as we must under our standard of review, we conclude the testimony was within the fair scope of the expert's report, and based on numerous prior references throughout the trial. There is no support for the claim of surprise. The trial court did not err or abuse its discretion. The trial court committed no error of

law and properly exercised its discretion in admitting the testimony challenged in this appeal. Appellants are not entitled to a new trial.

Judgment affirmed.

Judge Lazarus joins the Memorandum.

Judge Bowes files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2018